REUBEN R. THRALL v. THE ESTATE OF ABNER MEAD.

*Promissory Note.    Statute of Limitations.    Contract.    Consideration.*

A note of $6 87, dated March 14th, 1832, "payable in officer's fees as constable," although not in terms expressed to be payable on demand, or on request, is by legal construction so payable; and no demand having been made until 1859, it was *held*, that the note was barred by the statute of limitations.

Where a debt is payable in specific property, a new contract made before the debt has become payable, changing the mode of payment, and extending the time, needs no new consideration for its support.

The general rule in case of such debt is, that no action accrues until request or demand, and that the statute does not commence to run until demand is made, but the creditor may be guilty of such unreasonable neglect in omitting to make demand as will set the statute in operation without demand.

Where a note of $400., dated February 19th, 1827, was payable in installments in grain, the last installment April 1st, 1832, and in June, 1829, it was agreed between the plaintiff and maker that the plaintiff should not call for the grain until the last installment became payable; and in the mean time the maker was to render such services as constable for the plaintiff as he should call for. from time to time, which were to apply on the note; and before April 1st, 1832, the parties agreed that the balance due should be postponed to an indeffinite period, and that the plaintiff should still continue to receive his pay in the services of the maker as constable, the latter agreeing to render such services as called for from time to time, and if any balance still remained due, after deducting such services, the same should be payable at any time after April 1st, 1832, in grain, upon giving reasonable notice to pay in grain, it was *held*, that no new consideration was required to support this agreement, as to mode of payment, or extension of time.

This case distinguishable from those where the debt was already due and payable in money when the new agreement was made.

The maker having ceased to be constable in 1845, the balance then unpaid on the note became payable in grain upon reasonable notice or demand by the plaintiff, and it was *held*, that six years from 1845, was the limit of a reasonable time in which to make demand, and that after the expiration of that six years the statute began to run.

THIS was an appeal from the commissioners' disallowance of a claim in favor of Reuben R. Thrall against the estate of Abner Mead, who deceased in 1859. Declaration *indebitatus assumpsit*, common counts, special counts on notes. Action commenced prior to August 1st, 1863.

Plea, the general issue and statute of limitations, and joinder. Trial by jury, September Term, 1866, STEELE, J., presiding.

In support of the declaration, the plaintiff introduced a note of which the following is a copy, to wit:

"$6.87. For value received, I promise to pay Reuben R. Thrall, or order, six dollars and eighty-seven cents, with use, payable in officer's fees, as constable. Rutland, 14th March, 1832.

" A. MEAD."

The plaintiff also produced one other note, of which the following is a copy, to wit:

"For value received, I promise to pay Nathan Cushman, five hundred dollars, payable in merchantable grain as follows : One hundred dollars on the first day of April, 1828, and the like sum of one hundred dollars on the first day of April in each and every year thereafter, until the whole sum of five hundred dollars is paid, all in grain, with interest on each payment when due, commencing the first day of April next. Rutland February 19th, 1827.

" The grain above stated, to be delivered at the now inn of N. Cushman. A. MEAD."

The signature to both notes was admitted. The following was indorsed upon the back of said note, to wit:

" Pay the three last installments of one hundred dollars each, and the interest on said installments mentioned in this note, to Reuben R. Thrall, for value received, and waive the benefit of presentment as they fall due,—the two first installments I do not assign.

" Rutland, 31st March, 1829. N. CUSHMAN."

The plaintiff then introduced a contract in writing which was read in evidence. The following is a copy of said contract :

" I agree to do what business may be sent me by Reuben R. Thrall, or he and his partner, and charge the same, and take my pay by applying the amount of whatever services I may do, upon a note he

holds against me, payable in grain to Nathan Cushman by install-ments, of one hundred dollars each, due first of April, 1830, 1831 and 1832. The said Thrall agrees not to call on me for the payment of the grain until the last note becomes due, and if I shall have done enough to pay the whole of said note, they are to be thus cancelled; but, if not, I am to have the privilege of paying the balance, what-ever it may be, in grain, on the first day of April, 1832, but I am not to charge any interest on my account until April, 1832, but I am at liberty to pay the grain annually, in whole or in part, as it falls due, and if my account is more, at the expiration of the last note, than the amount due on the notes, I will take the balance in store pay, at any store in East Rutland, or grain to be delivered at some of the stores in East Rutland, as I shall direct, by giving reasonable notice.    A. MEAD.

" Rutland, June 9th, 1829."

· The plaintiff also introduced an account and evidence tending to prove the correctness of the charges.

The plaintiff introduced evidence tending to prove, that prior to the first of April, 1832, he promised Abner Mead that the payment of the balance due upon the three last installments of one hundred dollars each, on said note, should be postponed to an indefinite period, and that he should still continue to receive his pay in the services of the said Mead, as constable, to apply on said note, and that said Mead promised to render such services as called on by the plaintiff from time to time to be so applied, and if any balance still remained due on said note, after deducting the amount of said services, the same should be payable at any time after April 1st, 1832, in grain, after giving the said Mead reasonable notice to pay said grain, to all which the said Mead agreed. And the plaintiff also gave evidence tending to show, that he had never ascertained the amount of said Mead's account for services as constable, and had never applied the amount so paid on said note, and had never notified the said Mead to pay the balance due on said note in grain.

The plaintiff requested the court to charge the jury, that the statute of limitations would not run upon the small note payable in services, until a demand has been made for the services, and a refusal to pay

according to the tenor of said note; also, that if the jury found that there was a contract between the said Thrall and Mead, prior to April 1st, 1332, to postpone the payment of the three last installments to an indefinite period, and to still continue to receive his pay in grain after giving reasonable notice to pay the balance in grain, that the statute of limitations would not attach until the plaintiff had given reasonable notice for the payment of the grain, but the court refused so to charge the jury.

The contract of extension made previous to April 1st, 1832, was without any consideration other than may be implied from its terms as stated. Abner Mead was never constable, sheriff, or deputy sheriff after 1845, being last elected in 1844. There was evidence to prove part payment and a new promise in 1858. The court, as requested by the defendant, told the jury the plaintiff's claims were all barred unless they found a part payment or new promise in 1858, as the plaintiff's evidence tended to prove, and that if they did not find such a payment or promise in 1858, to render their verdict for the defendant. There was no evidence of any dealings or conversation between the parties after 1843, till 1858.

The jury returned a verdict for the defendant. The plaintiff duly excepted to the refusal to charge as requested, and to the charge as given.

*R. R. Thrall* and *C. H. Joyce,* for the plaintiff, cited upon the point as to the time when the statute of limitations begins to run, *Paine* v. *Webster,* 1 Vt. 101; *Keith* v. *Ware et al.,* 2 Vt. 174; *Adams* v. *Clark,* 14 Vt. 9; *Staniford* v. *Tuttle,* 4 Vt. 82; *Kingsbury* v. *Butler,* 4 Vt. 458; *Elkins* v. *Parkhurst,* 17 Vt. 105; *Stanton* v. *Estate of Stanton,* 37 Vt. 411.

*M. G. Everts* and *E. Edgerton,* for the defendant, cited upon the point, that the new agreement as to the mode of payment and extension of time, was void for want of consideration, *Rix* v. *Adams et al.,* 9 Vt. 233; 11 Vt. 66; 13 Vt. 423; 4 Vt. 131, & 512 & 101; 16 Vt. 220; 3 Vt. 338; 2 Vt. 536; 11 Vt. 166.

The opinion of the court was delivered by

Peck, J.   The six dollar and eighty-seven cent note, dated March 14th, 1832, " *payable in officers fees as constable*," although not in terms expressed to be payable on demand or on request, is by legal construction so payable.   The mode of payment specified is such that it required processes to be put into the maker's hands by the plaintiff for service, or notice to the maker what services were required of him, before he could make the payment specified.   The note was, therefore, payable on request or on demand.   The general rule in such case is, that no action accrues to the creditor until request or demand.   The general rule also is that the statute of limitations does not commence to run in such case until demand is made, although the debt is absolute and only requires a demand of payment to perfect the right of action.   If this rule has no limitation as applicable to cases of this kind, the county court erred in holding as matter of law that the note was barred by the statute.   But in such case the creditor may be guilty of such unreasonable neglect in omitting to make demand as will set the statute in operation without demand.   Some such rule would seem to be necessary to protect parties from stale demands of this character.   In some cases it has been left to the jury to presume a demand as matter of fact from lapse of time and other circumstances.   But this is hardly a sufficient protection against the mischief that would ensue without some rule of law on the subject.   An entire exemption of such demands from the statute unless demand is proved, would enable creditors in contracts of this character to hold them indefinitely, or until all evidence of a demand or payment has become extinguished or put beyond the reach of the debtor, by lapse of time, even when a seasonable demand has been made, or the debt actually paid.   The difficulty is in assuming as matter of law a definite period of time as such neglect of the creditor to make demand, which should put the statute in operation.   There are reported cases in which it is held that the creditor may have the whole period of the statute of limitations in which to make demand, and if he make no demand in that time, the statute will then commence running.   Where there is nothing peculiar in the terms of the contract or other circumstances

indicating that the parties contemplated any longer delay than is to be inferred from the fact that the note or contract is payable on demand, all at one time, perhaps the rule adopted in the cases alluded to is sufficiently liberal towards the creditor. But in *Stanton* v. *The Estate of Stanton,* 37 Vt. 411, the court refused to apply this rule. But that case was put expressly upon the peculiar terms of the note. The note was for a considerable amount, being for four hundred dollars, payable in produce or wood from the farm, on demand, as he, (the payee,) *may want to use the same.* The note had run a few months over twelve years, when the payee died; and it was admit-. ted no demand had been made. The court held that as the note was in effect payable from time to time, as the payee might want to use the produce or wood, or both, it was not like a note payable on demand simply, and that it was not barred by the statute. Considering the small amount of the note in question in this case, and the terms of the note, the reason is stronger in this case in favor of assuming six years as such delay in making demand as will put the statute in operation, than in that case. But we need not decide that that rule should be applied to this note, for there are other facts which render such decision unnecessary. It appears that the maker was constable at the date of the note, and. continued to be so till 1845, a period of thirteen years, when he ceased to hold the office. The maker of the note died in 1859. It is stated in the case that the action was commenced prior to August 1st, 1863. This probably was stated to show that the plaintiff was a competent witness. This is an appeal from commissioners on the estate of the intestate. From this we infer that what is termed the commencement of the action, is the presentation of the claim before the commissioners, which could not have been earlier than 1859. All that it is necessary to decide in relation to this small note is that the statute began to run a sufficient time before 1859 to bar the note. This gives the plaintiff, in which to make demand, more than the period necessary to raise the common law presumption of payment. By this we do not intend to be understood that a shorter period would not be sufficient to bar the note. The county court made the same ruling as to the larger note, subject to the effect of a part payment or promise in 1859, which the jury

failed to find.   This note was dated February 19th, 1827, and payable in grain in installments.   So far as the plaintiff had an interest in it, it was payable one hundred dollars April 1st, 1830, one hundred dollars April 1st, 1831 and one hundred dollars April 1st, 1832.   It came into the plaintiff's hands March 31st, 1829.   June 9th, 1829, the plaintiff and Mead made a written agreement, in substance, that the plaintiff should not call on Mead for the grain until the last installment became payable ; and in the mean time Mead was to render such services as constable for the plaintiff as the plaintiff should call for from time to time, and which were to apply on the notes ; and whatever should be due when the last installment became payable should be paid in grain at that time, with the right on the part of Mead to pay whatever he chose to in grain as the installments became payable.   The plaintiff's evidence tended further to show that afterwards, and before April 1st, 1832, the parties agreed that the payment of the balance due upon these three installments should be postponed to an indefinite period, and that the plaintiff should still continue to receive his pay in the services of Mead as constable ; Mead agreeing to render such services as called for from time to time, and if any balance still remained due after deducting such services, " the same should be payable at any time after April 1st, 1832, in grain, after giving Mead reasonable notice to pay said grain," and that the plaintiff had never ascertained the amount of Mead's services, or applied it on the note, and had never notified Mead to pay the balance in grain.   It is insisted on the part of the defendant that the agreement as to the mode of payment and the extension of the time, was without consideration and void.   We are referred to several cases to establish this proposition.   The cases cited are not applicable.   They are cases where the debt was already due and payable in money when the new agreement was made.   There is a manifest distinction between such case and a case like this, where the original contract is payable in specific articles, or property, and the new contract is made before the debt has become payable, and the debtor relying on the new agreement suffers the time specified in the original contract for payment to expire.   In such case it would be a fraud to allow the creditor to collect the debt in money

when the original contract expires, and repudiate the new agreement, and thus convert the debt into money contrary to the agreement, and to the prejudice of the debtor. But in case of a debt already due and payable in money, where the agreement is made to extend the time, it requires some new consideration to bind the creditor ; because the debtor by relying on the promise of the creditor to delay payment, is not in a legal sense prejudiced, as the original debt is not thereby changed in the mean time in its character or mode of payment. After this last agreement between these parties no right of action existed according to the general rule until demand according to the agreement. As Mead ceased to be constable in 1845, and was not after that constable, sheriff or deputy sheriff, whatever balance there remained unpaid on the note, was payable in grain on reasonable notice or demand by the plaintiff. As the note was no longer payable from time to time as called for, but payable on demand, we hold that six years from 1845 was the limit of a reasonable time to make demand, and that at the expiration of that six years the statute began to run ; especially as it appears that the dealings of the parties ceased in 1843. As fourteen years elapsed from 1845 to the death of Mead, and the presentation of the claim before the commissioners, the court properly held the note barred by the statute.

Judgment affirmed.