LYNDON SAVINGS BANK *v.* INTERNATIONAL COMPANY,
ET AL.

May Term, 1905.

Present: ROWELL, C. J., TYLER, START, WATSON, HASELTON, and
POWERS, JJ.

Opinion filed November 9, 1905.

*Promissory Notes—Indorsement by Stranger—Effect—Consideration—Extension of Payment—Corporations—Estoppel—Statute of Limitations—Waiver—Savings Banks—
V. S. 4099.*

One who however long after its execution, puts his signature in blank
upon the back of a promissory note which he does not own, assumes, *prima facie*, the obligation of a maker.

It is for the jury to weigh the evidence and this Court cannot disturb
a verdict which the evidence, however conflicting, tends to support.

The sufficiency of the consideration of a contract does not necessarily depend upon whether the thing promised results in a benefit
to the promisee, or in a detriment to the promisor.   It is enough
that something is promised, or the exercise of a present right is
forborne.

The promise by the owner of a promissory note to extend the time of
its payment is a sufficient consideration to support the contract
made by defendants by signing their names on the back thereof.

One of the makers of a demand promissory note having become insolvent, plaintiff's agent told defendants that if they would fix the
note so that it would be lawful and safe in the judgment of plaintiff, that it could run as long as the interest was kept paid and
plaintiff considered the security good.   Whereupon defendants
placed their signatures upon the back of the note.   *Held*, in a suit
based on said indorsement, that the fact that plaintiff, without
objection, continued to hold the note and to receive the interest
thereon semi-annually for years after defendants so indorsed it,
shows that plaintiff had accepted the security of defendants' said
indorsement, and that defendants must have so understood it.

When certain officers of a corporation, without authority to do so, agreed with the owner of its promissory note for an extension of the time of payment, in consideration of their indorsing their names thereon, and the corporation received the benefit of the forbearance, and paid the interest on the note for five years after the agreement for said extension was made, the corporation is estopped from denying the authority of its officers to make said agreement for extension.

When the owner of a promissory note, reserving his right to proceed against the "indorsers"—who are really joint makers—agrees with another maker thereof to receive and apply on the note dividends from property assigned by the latter for the benefit of creditors, and does so receive and apply such dividends, such indorsers are not thereby discharged from the payment of the balance due on said note.

The makers of a promissory note are bound by the provision therein waiving the Statute of Limitations.

In an action on a promissory note payable on demand, it appeared that certain defendants placed their signatures on the back of the note several years after it was given, and the jury found that they did so as "joint makers," in consideration of an extension of the time of payment; that no definite time was agreed upon, but that a reasonable time for such delay was "until plaintiff was dissatisfied with the security—until payment was demanded or offered." *Held*, that these findings did not make the note, in respect of said defendants, payable on demand, so as to start the Statute of Limitations from the date of their said indorsement.

An agreement by a savings bank, to extend the time of payment on a note until the bank should become dissatisfied with the security and call for payment, is not in violation of V. S. 4099, which provides that a savings bank shall not extend the time of payment for a loan on personal security for a longer time than one year.

SPECIAL ASSUMPSIT on a promissory note. The defendants severed in their defence, and each pleaded the general issue, with notice; Statute of Limitations; discharge of the International Company by plaintiff, and payment. Replications; similiter to first plea; waiver, or estoppel, to second; traverse of third. Rejoinders by Prouty and Miller: traverse to second replication; similiter to third. Rejoinder by Inter-

national Company: Demurrer to second replication; similiter to third.    Trial by jury at the June Term, 1904, Caledonia County, *Watson,* J., presiding.    Special verdicts; no general verdict.    Judgment against International Company and O. C. Miller for amount of note.    The International Company and O. C. Miller excepted.    Judgment that G. H. Prouty recover his costs.    Plaintiff excepted to the judgment in favor of G. H. Prouty.

The International Company is a corporation organized under the laws of this State.    The writ in this case is dated March 7, 1901, and was served March 11, 1901.    The note in suit is for $5,000.00, dated June 12, 1886, payable to plaintiff, or order, on demand with interest semi-annually, and waiving "all right or claim to the Statute of Limitations," and signed

> "INTERNATIONAL CO.
> J. A. PROUTY, Pres.
> H. E. FOLSOM, Treas."

Upon the back appears: "Waiving demand and notice,

> H. E. FOLSOM,
> O. C. MILLER,
> G. H. PROUTY."

The interest was paid by the International Company, semi-annually, down to July 1, 1898.    J. A. Prouty died before this suit was brought and so is not a party.    H. E. Folsom pleaded his discharge in insolvency, and a non-suit was entered as to him.    He was adjudged an insolvent in the fall of 1893.    On December 19, 1893, and after Folsom had been adjudged an insolvent, plaintiff sent its agent, L. B. Harris, to Newport, Vt., to see G. H. Prouty—who is a son of J. A. Prouty and was then a director of the International Company —and O. C. Miller about doing something in respect of the

note in suit. After an interview with said Harris, O. C. Miller and G. H. Prouty wrote their names on the back of said note, at Newport, Vt., on December 19, 1893. O. C. Miller was the manager of the International Company from 1886 to September 30, 1898. In the fall of 1898, the International Company became financially embarrassed; and O. C. Miller wrote to each creditor of the Company, including the plaintiff, a letter dated September 22, 1898, signed by him as manager, stating that the International Company was insolvent, and calling a meeting of the creditors at the office of the Company on September 30, 1898. The letter sent to plaintiff also stated: "Although you have good backers on your note, if convenient should like to have you present at the meeting."

Said meeting of the creditors was held September 30, 1898. At said meeting, the creditors elected a committee of three, whom they directed to take charge of the assets of the Company, realize upon the same, and divide the proceeds *pro rata* among the creditors of the Company. J. W. Copeland, who was a trustee and the Vice-President of the plaintiff, was present at said meeting, but did not vote. Before any vote was taken he said to the meeting that he was there as the representative of the plaintiff to note the proceedings of the meeting and report to plaintiff's trustees, and that he was without instructions, and should not vote. He reported the action of said meeting to the plaintiff.

The stockholders of the International Company, at a meeting duly warned and held for that purpose on October 1, 1898, voted that "the Company is insolvent," and that its assets be realized upon and disposed of as directed by said creditors' meeting. The evidence of defendants tended to show that thereafterwards the International Company delivered to said creditors' committee all its assets; and that each creditor, except the plaintiff, executed and delivered to the In-

ternational Company a writing agreeing to accept in *settlement* of their claims such sums as might be their due, *pro rata,* from the proceeds realized by said creditors' committee from the assets of the Company.

It appeared from the records of the plaintiff that on October 3, 1898, the plaintiff's trustees voted: "To give the assent of the Lyndon Savings Bank to the proposition that the property of the International Company be put into the hands of trustees to be sold to the best advantage, and the proceeds to be divided between the creditors *pro rata,* the bank reserving all rights to collect its debt from the indorsers of the note." It appeared that on October 15, 1898, plaintiff, by its treasurer, wrote a letter to the International Company, which was received by O. C. Miller in due course of mail, and which gave notice of said vote of plaintiff's trustees. Defendants' evidence tended to show that about October 1, 1898, the International Company surrendered all of its assets to said creditors' committee, who thereafter converted the same into cash, and paid from the proceeds thereof to the creditors, including plaintiff, a dividend of ten per cent. on each of the following dates: November, 1898; March, 1899; June, 1900; November, 1900; and a dividend of five per cent. on each of the following dates: May, 1901; August, 1901; December, 1902; and September, 1903; that each ten per cent. dividend so paid plaintiff was $507.50; and each five per cent. dividend so paid plaintiff was $253.75. There was no evidence tending to show that O. C. Miller ever paid anything on the note in suit. There was no evidence, except said letter dated September 22, 1898, tending to show that O. C. Miller had in any way, since he wrote his name on the back of said note on December 19, 1893, acknowledged any personal liability on said note, or promised to pay it. Only special verdicts were submitted, and in answer to

these the jury found that G. H. Prouty and O. C. Miller were makers; that an agreement was made at Newport, Vt., on December 19, 1893, between plaintiff and the International Company for an extension of the time of payment of the note in suit "until plaintiff is dissatisfied with security"; that on December 19, 1893, plaintiff agreed with O. C. Miller and G. H. Prouty that the time of payment on the note in suit should be extended, if said Prouty and Miller wrote their names on the back of said note, but that no particular time for the payment of the note was stated; that a reasonable time for the payment of said note after said agreement was made was "until payment was demanded or offered"; that it was "doubtful" whether the note could have been collected of the International Company at any time from December 19, 1893, to January 1, 1898; that O. C. Miller and G. H. Prouty were not damaged by plaintiff's omission to collect the note in suit from December 19, 1893, to January 1, 1898; that after October 1, 1898, the committee appointed by the creditors of the International Company managed and disposed of the property of said Company, and paid from the proceeds thereof the dividends which were paid to the creditors; that the plaintiff by its conduct with reference to the property of the International Company, and by accepting the dividends from the committee of the creditors of said Company, did not discharge said Company from further liability; that O. C. Miller and G. H. Prouty did not sign their names on the back of the note in suit in consideration that the plaintiff would not prove that note against H. E. Folsom's insolvent estate, unless compelled by law to so do.

*Cook & Norton,* and *W. W. Miles* for the plaintiff.

The fact that Miller and Prouty signed the note shows, *prima facie,* that they are joint makers. *Barrows* v. *Lane and Benham,* 5 Vt. 161; *Knapp* v. *Parker,* 6 Vt. 642; *Flint* v. *Day,* 9 Vt. 345; *Nash* v. *Skinner,* 12 Vt. 219; *Strong* v. *Riker,* 16 Vt. 554; *Sylvester* v. *Downer,* 20 Vt. 355; *Bank* v. *Marble Co.,* 61 Vt. 106; *Ballard* v. *Burton,* 64 Vt. 387; *Brooks* v. *Thatcher,* 49 Vt. 492; *Brooks* v. *Thatcher,* 52 Vt. 559; *Lyndon Savings Bank v. Int. Co. et al.,* 75 Vt. 224.

The general manager of a corporation has the power to borrow money to meet corporate expenses. Cook Corp. (4th ed.) § 719; *Rosemond* v. *Northwestern, etc. Co.,* 62 Minn. 374.

An agreement to forbear for an indefinite time is a sufficient consideration for indorsing the note. *Bullard* v. *Benton,* 64 Vt. 387; *Cit. Sav. Bank* v. *Babbitt's Est.,* 71 Vt. 182; *Eltyng* v. *Vanderlyn,* 4 Johns. 237; Fell on Guaranty & Suretyship, 29 (N. 1); *King* v. *Upton,* 4 Me. 387; *Howe* v. *Taggart,* 132 Mass. 284; *Elton* v. *Johnson,* 16 Conn. 253; *Prouty* v. *Wilson,* 123 Mass. 297; *Robinson* v. *Gould,* 11 Cush. 55; *Moore* v. *McKenney,* 83 Me. 80 (21 Atl. Rep. 749); *Calkins* v. *Chandler,* 36 Mich. 320 (24 Am. Rep. 593); *Hakes et al.* v. *Hotchkiss,* 23 Vt. 231.

Neither the corporation nor Prouty, nor Miller can raise the question of want of authority to make said contract for forbearance. Cook, Corp. (4th ed.) Par. 761; Cook, Corp. (4th ed.) 287, § 140; *Middlebury College* v. *Williamson,* 1 Vt. 212; *Newell* v. *Herbert,* 2 Vt. 351; *Gray* v. *Otis,* 11 Vt. 628; *Windham Prov. Inst.* v. *Sprague's Est.,* 43 Vt. 502; *Bank of Orleans* v. *Fassett,* 42 Vt. 432; *Ladd* v. *Lord,* 36 Vt. 194.

Defendants, having agreed that they would not plead the Statute of Limitations, are estopped from doing so. *Trust Co.* v. *Sheldon et al.,* 68 Vt. 259; *Stearns* v. *Stevens,* 32 Vt.

678; *Ins. Co.* v. *Bloodgood,* 4 Wend. 652; *Paddock* v. *Colby,* 18 Vt. 485; *Benton* v. *Stevens,* 24 Vt. 131; *Randon* v. *Toby,* 11 How. 493; *Gay's Est.* v. *Hassom,* 64 Vt. 495.

A discharge of the principal debtor by his creditor will not release the surety, if the creditor reserves in the discharge the right to proceed against the surety.  *Close* v. *Close,* 4 De G. M. & G. 176; *Wyke* v. *Rogers,* 1 De G. M. & G. 408; *Ville* v. *Hoag,* 24 Vt. 46; *Mayhew* v. *Crecket,* 2 Swanst. 185; *Boultbee* v. *Stubbs,* 18 Ves. Jr. 20; *Rees* v. *Berrington,* Vol. II, part 2, L. C. Eq. Marg. p. 988 (4th ed.)

*Young & Young* for the defendant.

The plaintiff, by accepting dividends, *pro rata,* from the assets of the International Company, discharged that company, and thereby released the sureties.  *Dauchy* v. *Goodrich,* 20 Vt. 127.

The findings of the jury make the note a demand note, as to Miller and Prouty.  *Dawley* v. *Wheeler,* 52 Vt. 574; *Manter* v. *Churchill,* 127 Mass. 31; *Kingsbury* v. *Butler,* 4 Vt. 458.

In any event, the Statute of Limitations began to run, as to Prouty and Miller, not later than December 19, 1894.  V. S. 4099; *Verder's Ex.* v. *Verder,* 63 Vt. 38; *Clark* v. *Snow,* 60 Vt. 205.

Miller's letter of September 22, 1898, was the act of the company, and not that of Miller.  But the letter does not contain an acknowledgment sufficient to remove the statutory bar.  *Prescott* v. *Vershire,* 63 Vt. 517; *Brayton* v. *Rockwell,* 41 Vt. 621; *Aldrich* v. *Morse,* 28 Vt. 642; *McCormick* v. *Brown,* 95 Am. Dec. 170; *Roscoe* v. *Hale,* 7 Gray 274, 19 Am. & Eng. Enc. 294; *Fort Scott* v. *Hickman,* 112 U. S. 150; *Ensign* v. *Batterson,* 68 Conn. 298; *O'Riley* v. *Finigan,* 58

Pac. Rep. 28; *Chambers* v. *Garland,* 3 Green (Iowa) 322; *Holberg et al.* v. *Jaffray & Co.,* 65 Miss. 526; *Keemer* v. *Zartman,* 144 Pa. St. 179; *Thomas* v. *Cary,* 26 Colo. 485.

TYLER, J.   The note in controversy is described in the opinion in this case, reported in 75 Vt. 224, 54 Atl. 191.   At the first trial in the county court a verdict was directed for the defendants, which action this Court held was error, reversed the judgment and remanded the case for a new trial.   We then held that:

"What relation Miller and Prouty assumed to the note by placing their names upon it was a question of fact, and not of law.   If they became joint makers, no demand was necessary and this action was properly brought against them.   If they were indorsers, it could not be held, as matter of law, that they waived demand and notice by placing their names under the name of Folsom, who, when the note was executed, signed it as indorser, waiving demand and notice; and if there was an agreement or understanding between the parties that the time of payment should, in consideration of their signing the note, be forborne, there being no time of forbearance specified, it would mean, in law, a reasonable time.   What constituted a reasonable time, in the circumstances, was a question of fact for the jury, and as against Miller and Prouty, the Statute of Limitations would begin to run at the expiration of such reasonable time."   Quoting further from that opinion:

"And it has generally been held by this Court that one not before a party to the note, who signs his name upon the back of it, in blank, is *prima facie* a maker, and assumes the same obligations as if he wrote his name upon the face of the instrument.   In *Sylvester* v. *Downer,* 20 Vt. 355, 49 Am. Dec. 786, the rule was extended and emphasized, for it is there declared that it makes no difference that the signing is

long after the making of the note and while it is in circulation, for the reason, as stated by Judge Redfield, that if the signer consents to be thus bound, and induces others to take the note under that expectation, he will be estopped to deny that fact and will be treated the same as if he had signed the note at its inception. It was, however, held in that case, that the indorsement being in blank, the real obligation intended to be assumed—whether that of maker, guarantor or indorser—might be shown by parol evidence. In *Bank* v. *Dorset Marble Co.,* 61 Vt. 106, 17 Atl. 42, this rule was recognized and reaffirmed."

At the last trial the jury found by special verdicts submitted to them, that Miller and Prouty, by placing their names upon the note, became joint makers thereof; that an agreement was made December 19, 1893, between the plaintiff and the International Company for an extension of the time of payment, but for no definite time, and that a reasonable time to delay its collection was: "Until the plaintiff was dissatisfied with the security." Another special finding was: "Until payment was demanded or offered." There were special findings that the International Company turned over to a committee all its assets to be divided *pro rata* among its creditors, that the committee paid over the dividends, and that the Company was not discharged from further liability.

The defendants, Miller and Prouty, objected and were allowed an exception to the submission to the jury of the question whether they signed the note as joint makers, and they claimed that there was no evidence that they were joint makers; they also excepted to the submission to the jury to find whether there was an extension of the time of payment of the note, and claimed that there was no evidence to sustain that finding.

The defendants contend that this action was barred by the Statute of Limitations; that no new promise or acknowledgment was shown, and that the note had not matured when the action was commenced.

The case shows that no agreement was made at the time the money was loaned and the note was given that either Miller or Prouty should ever become parties to the note, and it appears that neither of them received any security or indemnity for placing their names upon the back of it. Down to that time the note had remained as it was when made by the International Company, with Folsom as indorser. The plaintiff seeks to hold Miller and Prouty liable by reason of their placing their names upon the note and claims that they thereby became makers. The defendants claim that they became indorsers or guarantors. The general rule of law is found in the opinion of Redfield, J., in *Sylvester* v. *Downer,* (*supra*) "that he who writes his name upon the back of a note, if he were not before a party to it, assumes the same obligation as if he wrote his name upon the face of the instrument; and that, although he does this long after the making of the note, it shall make no difference." But the question of Miller and Prouty's liability is not to be determined by this rule of law, but by the agreement made between themselves and L. B. Harris, who went to see them and make an arrangement about the payment or an extension of the note.

It appeared that the note was overdue, that Folsom had been adjudged insolvent, that the plaintiff employed Harris to go to Newport and call upon Miller and Prouty "to do something about the note," and that as a result of the interview they wrote their names upon the instrument. The exceptions state that the evidence was very conflicting as to what was said between them, and it so appears by the record; but it is not the duty of this Court to reconcile the evidence. As there

was evidence tending to show that Miller and Prouty signed the note as makers, the submission of that question to the jury was not error. The weight that should be given to the testimony of the witnesses who testified upon this subject was a matter that rested with the jury. The testimony of Harris tended to show that after Folsom became insolvent the plaintiff sent him to see Miller and Prouty about the note; that he saw them at Newport and informed them that he came as a messenger from the plaintiff to collect the note, if collection could be made, and if not, to ascertain their wishes or obtain instruction about proving this, and another note which the plaintiff held, against Folsom's estate; that he told them that Folsom had said that they—the Proutys and Miller—were, practically, the Company; that if they would fix the note so it would be lawful, and safe in the judgment of the bank, it could run as long as they kept the interest paid and the bank considered the security good; that Miller and Prouty both said that the estate of Folsom should not be charged with the loan and that they would do anything that he, Harris, or the plaintiff required in respect to fixing the note so as to make it all right without Folsom's name, that they would put their names upon the note, and that they did so after Harris had taken a little time to make inquiry as to their financial responsibility and expressed his willingness to accept their names. This evidence brings the case within the rule in *Sylvester* v. *Downer*. Miller, Prouty and Folsom disputed the testimony of Harris, but it was for the jury to decide as to the weight of evidence, and this Court cannot disturb the verdict.

Upon the testimony of Harris the jury were warranted in finding that an agreement was made between the plaintiff and said Company for an extension of the time of payment, which was a sufficient consideration for Miller's and Prouty's acts in view of their interest in the Company. It is held that,

"Consideration does not necessarily depend upon whether the thing promised results in a benefit to the promisee, or a detriment to the promisor.   It is enough that something is promised, or the exercise of a present right is forborne." *Ballard* v. *Burton,* 64 Vt. 387, 24 Atl. 769, and cases cited in the opinion.

The defendants contend that, upon the testimony of Harris, the alleged agreement made by him with Miller and Prouty was not operative until accepted by the plaintiff and approved by the Inspector of Finance.   It may be presumed that Harris returned the note to the bank and that the bank officers were satisfied with the names upon it that Harris had obtained, for they continued to hold it for years thereafter without objection by them and apparently with the approval of the state official.   They also received the interest upon it semi-annually down to July, 1898.   Miller and Prouty might well have understood that the note had been accepted; that Miller did so understand it is shown by his note to the plaintiff written nearly five years later in which he said, "you have good backers on your note," which words must have referred to Mr. Prouty and himself.

The defendants also contend that the case shows no authority in Miller conferred upon him by the International Company to make the agreement through Harris with the plaintiff.   It is true that no vote of the Company was produced by the plaintiff showing that such authority was given Miller, but it appeared from defendant Miller's testimony that he was the general manager of the Company at the time he signed his name to the note; that he held that position from 1886 until the fall of 1898, when all the assets of the Company were placed in the hands of a committee, converted into money and the proceeds distributed *pro rata* among the cred-

itors, the plaintiff reserving the right to proceed against the indorsers upon its note.

It is unnecessary to hold as an abstract legal proposition that, as general manager of the corporation, Miller had power to borrow money to meet corporate debts in due course of business.    He testified that he had charge of the funds of the Company as general manager, and that it was his duty to pay a note when it came due, "or to look out for it."    He evidently understood that he and Prouty had authority to sign this note, and the record shows no dissent by the other directors to his agreement for an extension; neither is there any evidence in the case that tends to contradict his testimony.

But assuming that Miller and Prouty had no authority to make the agreement, they and the Company received the benefit of the forbearance, and the Company ratified it by paying the interest upon the note for five years after the agreement was made.    That the defendants were estopped from denying Miller and Prouty's authority was held in the former decision. *Grand Isle* v. *Kinney,* 70 Vt. 381, 41 Atl. 130, is an authority upon this point.

It was said in the former opinion that it could not be held as a matter of law that the vote taken by the plaintiff, and its receipts of dividends from the committee of the International Company, discharged the Company.    The proposition of the Company to its creditors was that they should accept, *pro rata,* such amounts as should be received from the Company's assets in settlement of their respective claims.    The plaintiff, by its resolution, assented to the proposition that the property be sold and the proceeds be divided among the creditors, with a reservation of the right to collect its debt from the indorsers of the note, and the Company, through its committee, acted upon this acceptance and subsequently paid dividends to the plaintiff with the other creditors.    That the

plaintiff should receive its dividends, reserving the right to collect the remainder of its debt from Miller and Prouty, whom the jury have found were joint makers of the note, was a matter of contract between the International Company, through its committee, and the plaintiff.    Miller and Prouty were evidently regarded by the plaintiff as responsible, and it is not presumable that it would have released them upon receiving what could be got from the Company's assets, which Miller had said in his notice to the creditors were insufficient to pay the debts in full.    It is noticeable that the plaintiff's resolution omitted the word "settlement" which the committee's offer contained.    There was no error in the refusal of the court to set aside the ninth special finding.

It is competent for the makers of a promissory note to stipulate therein that they will waive the Statute of Limitations.    *Trust Co.* v. *Sheldon et al.*, 68 Vt. 259, 35 Atl. 177. The plaintiff contends that, as the jury have found that Miller and Prouty signed this note as joint makers, they became subject to the clause, "and agree to waive all right or claim to the Statute of Limitations."    But it is unnecessary to decide this question, for the jury found that an agreement was made for an extension of the time of payment of the note; that no definite time was agreed upon, but that a reasonable time for such delay was, until the plaintiff was dissatisfied with the security—until payment was demanded or offered.

It cannot be maintained that these findings made this instrument a demand note in the ordinary legal meaning of the term, "payable on demand."    The jury in effect found that a right of action did not accrue upon the note until the plaintiff was dissatisfied with the security and made an actual demand of payment, and this was the agreement according to Harris' testimony.    *Stanton* v. *Stanton*, 37 Vt. 411; *Thrall*

v. *Mead*, 40 Vt. 540; *Smith* v. *Franklin*, 61 Vt. 385; *Ins. Co.* v. *Batchelder & Son*, 62 Vt. 148, 19 Atl. 982. The case shows that demand of payment was made of defendants Miller and Prouty on February 5 and February 19, 1901, and that the suit was brought March 7, 1901. The failure of the International Company in 1898 and the non-payment of interest after that were sufficient causes for the plaintiff's dissatisfaction with the security.

The finding of the jury, that an extension of time of payment was agreed upon by the parties, is inconsistent with the defendants' contention that the other finding should be construed to mean that the note was payable immediately after the agreement was made. According to the testimony of Harris the note was to run along indefinitely, if the interest was kept paid, the only limitation being the time when the plaintiff should become dissatisfied with the security and call for payment. When demand was made the plaintiff's cause of action accrued against Miller and Prouty. This answers the defendants' suggestion in the brief of counsel that the agreement was in violation of V. S. 4099, which provides that a savings bank shall not make a contract or agreement to loan or to extend the time of payment of a loan, on personal security, for a longer time than one year.

Upon the special findings judgment should have been rendered against both Miller and Prouty; *therefore the judgment for defendant Prouty is reversed; the judgment against the International Company and Miller is reversed, pro forma, and judgment is rendered for the plaintiff against the three defendants, with costs.*