JOSEPH WARD'S ADMR. *v.* PREFERRED ACCIDENT INSURANCE COMPANY.

October Term, 1904.

Present: ROWELL, C. J., TYLER, MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed October 5, 1907.

*Accident Insurance—Construction of Policy—Conflict Between Written and Printed Provisions—Effect—Oral Evidence—Knowledge of General Agent Imputed to Company—Evidence—Instructions—Motion for Verdict as Against Weight of Evidence—Discretion of Court.*

In construing written contracts, the circumstances in which the parties contracted may be considered; and their common knowledge and understanding is sometimes such a circumstance.

Where an insurance company's general agent for a certain district effects insurance therein, his knowledge in respect of the insurance transaction will be imputed to the company.

In an action by an administrator on an accident insurance policy, which by its terms did not cover injury or death "while or in consequence of riding in or on any locomotive, or while walking or being on the roadbed of any steam railway," but the written portion whereof insured the intestate as "contractor, office and travelling," where the evidence tended to show that the intestate was killed by falling from an observation locomotive, while

21

inspecting railroad bridges in his occupation as railroad-bridge contractor, plaintiff was entitled to show by defendant's general agent who effected the insurance that, in taking the application and effecting the insurance, the witness knew the intestate to be, and for a long time to have been, a railroad contractor, engaged in building railroads and railroad bridges and abutments, as that knowledge on the part of its general agent is imputed to the company, and so tended to show the sense in which the elliptical phrase, "contractor, office and travelling," was used in the policy.

The "travelling" referred to by the phrase of the policy insuring plaintiff's intestate as "contractor, office and travelling," is travel by the methods and conveyances usually incident to the occupation of a contractor who does not himself participate in the actual work of construction.

The court properly excluded a burnt fragment of the application for the insurance in question, both the written and printed parts whereof were incomplete, and which was produced and offered in evidence by defendant without any explanation of its condition.

Evidence examined and *held*, that it tended to show that plaintiff's intestate was killed by accidentally falling from an inspection car, as the declaration alleged, while he was travelling in that conveyance in pursuance of his occupation of contractor, in which he was insured by the terms of the policy, which method of travel was usual in that occupation and incident thereto; and that, therefore, the court properly denied defendant's motion to have a verdict directed in its favor, on the grounds that the intestate was killed while walking on the railway roadbed or bridge, and in an occupation or exposure more hazardous than that in which he was insured.

An "observation car," designed for inspecting a railroad, and consisting of a locomotive having an observation room built over the boiler in front of the engineer's cab, is a "locomotive," within the meaning of a clause in an accident insurance policy, providing that the insurance did not cover injury or death "while or in consequence of riding in or on any locomotive."

The written portions of an insurance policy will prevail over conflicting printed provisions.

In an action on an accident insurance policy, the written portion whereof insured plaintiff's intestate while travelling in his occupation of a railroad-bridge contractor and builder, by the

methods and conveyances usual in that occupation and incident thereto, where the evidence tended to show that he was killed by accidentally falling from a locomotive while travelling thereon in his said occupation, and that this was a method of conveyance usual in that occupation and incident thereto, plaintiff could recover, notwithstanding the printed portion of the policy provided that it did not cover injury or death "while or in consequence of riding in or on any locomotive."

In order to recover in an action on an accident insurance policy, plaintiff must show that the cause of the accident was the cause alleged in the declaration.

A motion to set aside a verdict as being against the weight of the evidence is addressed to the discretion of the trial court, and its action thereon is not revisable where there is nothing to show that its discretion was not properly exercised.

SPECIAL ASSUMPSIT on an accident insurance policy. Trial by jury at the March Term, 1904, Washington County, *Stafford,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

At the close of all the evidence, defendant moved the court to direct a verdict in its favor for that the evidence did not tend to show that the insured's death was accidental; because the policy provided that it did not cover injury or death "while or in consequence of riding in or upon any locomotive"; because the policy did not cover accident or death occasioned by "walking or being on the roadbed or bridge of any steam railway"; because while the insured was permitted to travel by regular lines of passenger conveyance anywhere throughout the civilized world, it was one of the conditions of the policy that if he should be fatally or otherwise injured in any occupation or exposure more hazardous than that stated in his policy, he or his beneficiary, as the case may be, shall be paid only the amount fixed for such increased hazard in accordance with the classification of risks by the company and as per the table printed thereon. This motion was overruled, to which defendant excepted.

*Zed S. Stanton* and *George W. Wing* for the defendant.

Defendant's motion for a verdict should have been granted, for the reasons therein stated. *Laessig* v. *Travelers Protective Ass'n.*, 69 S. W. Rep. 470; *Aldrich* v. *Mercantile etc.*, 149 Mass. 457; *Carnes* v. *Traveling etc.*, 106 Iowa 281; *Employers' Liability Assur. Corp.* v. *Back*, 102 Fed. 229; *Standard etc. Co.* v. *Ward*, 65 Ark. 296; *Cram* v. *Equitable etc.*, 58 Hun. 13; *Murphey* v. *Am. Mut. etc.*, 90 Wis. 206.

*John W. Gordon* and *S. Hollister Jackson* for the plaintiff.

The burnt fragment of the application for the insurance in question was properly excluded, since it was produced by defendant and offered without explanation of its condition. 1 Greenl. Ev., §§605-6; Underhill Ev., §129; 2 Am. Ed. Stephens' Digest Ev. 188, n. 1. "The object of the rule of law, which requires the production of the best evidence of which the facts sought to be established are susceptible, is the prevention of fraud; and if a party is in possession of this evidence, and withholds it, and seeks to substitute inferior evidence in its place, the presumption naturally arises that the better evidence is withheld for fraudulent purposes, which its production would expose and defeat." * * * "The cause or motive of the destruction is, then, the controlling fact which must determine the admissibility of this evidence in such cases." *Bagley* v. *McMickle*, 9 Cal. 430; *Edwards* v. *McKee*, 1 Miss. 123; *Riggs* v. *Tayloe*, 9 Wheat. 483; *Blade* v. *Noland*, 12 Wend. 173.

The defendant company, through its general agent, Ballard, knew that Ward was a contractor and builder of railroad work, as well as other work, at the time Ward was insured, and long before that, and subsequently, to the time of his death. They, therefore, insured him while travelling in the usual and ordinary way of a contractor and builder engaged in railroad work. While so employed and while travelling in a usual and ordinary means of conveying such a contractor, Ward met an accidental death. The defendant company insured him against just such an accident as occurred. Elliott on Insurance, §393; *Pac. Mut. etc. Co.* v. *Snowden*, 58 Fed. 342; 1 May on Insurance, §132; Elliott on Insurance, p. 137, §158; Kerr on Insurance, p. 181, §86.

HASELTON, J. This was an action of assumpsit on an accident insurance policy. The declaration set out the policy with the conditions on the back thereof. The defendant pleaded the general issue and four special pleas to which the plaintiff replied. Trial by jury was had. A verdict for the plaintiff was returned and judgment was rendered thereon.

The insurance company by a policy, which the plaintiff made an exhibit, insured the plaintiff's intestate as "contractor, office and travelling," according to the written words of the policy. One S. S. Ballard, the general agent of the company for the county of Washington, took the application of Ward and forwarded it to the company, and the insurance was effected through said Ballard. Mr. Ballard was called as a witness by the plaintiff, and after he had testified as to the character and extent of his agency, he was permitted to testify, in substance, that in taking the application and effecting the insurance he knew Ward to be, and for a long time to have been, a railroad contractor engaged in building railroads and railroad bridges and abutments as well as a contractor in respect to other matters. This evidence as to the knowledge of the agent was, under the final ruling of the court in reference thereto, used, under objection and exception by the company, as tending to show the application of the words of the policy designating Ward's occupation. The evidence of the agent's knowledge of Ward's previous occupation bore of course only upon his knowledge of Ward's occupation at the time. The final ruling of the court was correct. Ballard's knowledge in the insurance transaction is taken to have been the knowledge of the company, he being its general agent throughout the district within which the insurance was effected, *Carrigan* v. *Ins. Co.*, 53 Vt. 418; *Fraser* v. *Ins. Co.*, 71 Vt. 482; and the company's knowledge that Ward was a railroad contractor acting in that occupation tended to show the sense in which the brief and elliptical phrase "contractor, office and travelling" was used in the policy issued by the company. The company's knowledge was one of the circumstances material to an interpretation and construction of the words that it used. Oral evidence with reference thereto did not vary the terms of the written contract and violated no rules of evidence. In the construction of contracts, the circumstances in which the parties contract may be looked at, and their common knowledge

and understanding is sometimes, and is here, such a circumstance. *Rioux* v. *Ryegate Brick Co.,* 72 Vt. 148; *Granite Works* v. *Bailey,* 69 Vt. 257; *McGowan* v. *Griffin,* 69 Vt. 168; *Hart* v. *Hammond,* 18 Vt. 127.

The agent Ballard was called as a witness by the plaintiff. On his cross-examination he was shown what the examining counsel denominated and what in fact was "a remnant of a paper," and the evidence of the witness tended to show that it was a part of the application for the insurance in question. The remnant had a burnt appearance. Before the close of the case, during an argument on a motion for a verdict in favor of the defendant made at the close of the plaintiff's evidence, this piece of paper was by the defendant offered in evidence in connection with Ballard's testimony, and was excluded, the court ruling that in the form in which it was, it was inadmissible without further evidence. This ruling was correct. Both the written and the printed matter on this paper were incomplete, and there was no evidence tending to explain its burnt and fragmentary condition as it came from the defendant's possession. The fragment showed the following words and parts of words: "contractor, not working, buil" and "office work & travell ." The claim of the company was that if this paper had been received "buil" would have signified building and "travell" would have denoted travelling, and that the applicant's written statement of his occupation would have been shown to be contractor, not working, building, and that his duties in that occupation were office work and travelling. If we assume this to be so, the defendant would have gained nothing by the admission of the fragmentary application. The application and policy construed in the light of the knowledge imputed to the company would have shown that the company insured Ward as a contractor and builder, not doing the actual work of building, but engaged in his office and in travelling about the duties of such a contractor and builder. With or without the restored application in the case, the "travelling" referred to as one of the duties of Ward's occupation was travel by the modes and conveyances ordinarily incident to the occupation of a contractor and builder not himself participating in the actual work of building or construction.

The policy by its terms did not cover injury or death "while or in consequence of riding in or on any locomotive," or, with an exception immaterial here, "while walking or being on the roadbed of any steam railway." The policy further provided that if the insured should be injured fatally or otherwise in any occupation or exposure more hazardous than that stated in the policy, the company should be liable only for the amount fixed for such increased hazard in accordance with the company's classification of risks. The declaration alleged among other things that Ward was killed solely by accidental means, by falling from an observation car. At the close of the evidence the defendant moved to have a verdict directed in its favor because the plaintiff had failed to make out a case under the allegation just referred to and, in substance, because of the foregoing provisions of the policy when applied to the evidence.

The claim that the plaintiff had failed to make out a case under his allegation is treated as equivalent to a claim that there was no evidence on which the plaintiff could go to the jury in support of the allegation. The motion was overruled and the defendant excepted.

The evidence tended to show that on the day of his death Ward was riding over the Rutland Railroad, in the Nehasane, an observation car as it may be called, though witnesses differed as to its proper designation. An examination of the whole testimony discloses that there was evidence fairly tending to show that at the precise time in question, Ward was travelling in said conveyance in pursuance of the occupation in which he was insured, and by the method of travel usual in that occupation and incident thereto. No one, so far as the evidence disclosed, saw Ward fall or saw him run over, but evidence tending to show the manner of his death is correctly summarized in the bill of exceptions, and the summary there given cannot well be abbreviated. We accordingly quote therefrom the following statement of the tendency of evidence on the part of the plaintiff: "That the observation car stopped for the purpose of permitting inspection of bridge No. 78 on said railroad, about six or eight feet before the bridge was reached from the front of said car, which was travelling in an easterly direction. That there were riding with Mr. Ward in said car, the bridge constructor, Badger, and the superintendent of the road, Parker;

that Parker and Badger left the car to go under the bridge, and when Mr. Ward was last seen alive, he was sitting in the observation car; that there were on the car a regular crew, in addition to the persons mentioned, consisting of conductor, brakeman, fireman and engineer; and that said car and engine constituted a train for the conveyance of people engaged as contractors and as officials of the road. That the said Badger and Parker proceeded under the bridge, and that Badger came out from under the bridge and motioned to the fireman to run the engine across the bridge, in order that observation might be made as to the effect on the bridge of the passage of the car over it; that before this signal to go forward was given, the engineer went on the ground to the front part of his engine to oil the same, and that Mr. Ward was not anywhere in front of the car; that upon the word from the fireman as communicated from Mr. Badger, the engineer took his place and looked carefully ahead of the car, and could see the track clear ahead of it and over said bridge, and that Mr. Ward was not on the said bridge at the time; that said bridge was about seventy feet span; that the fireman rang the bell fifteen or twenty seconds before starting the engine; that the conductor who, at the time of the stopping of the car, had gone forward of it about five or six hundred yards, looked around as the bell rang, and saw the car, and no one on the bridge or in front of it, and saw nothing of Mr. Ward; that the engine made a loud puffing noise when starting that could be heard a distance of two miles or more; that the car was so constructed that Mr. Ward could have remained in the interior of it and not be seen by the engineer or any of the other persons present, at the time the car was started across the bridge, or while it was running across the bridge; that Mr. Ward could have stepped to the front of the car at the time the signal for starting was given for the purpose of observing the bridge, and, as a matter of inference, that he accidentally fell from the car in front of it; that he was run over, and his head severed from his body; that after the car ran over the bridge Mr. Ward's body was found a little past the center of the bridge from the point where the car started, and about forty feet in front of where the car was standing at the time that it started; that after the car had started Mr. Badger and Mr. Parker saw his hat fall through the

bridge and his head followed and fell into the stream; that the hat struck the water before the head did, and was not on the head, but fell by itself; that just before the hat fell, Mr. Badger and Mr. Parker heard Mr. Ward make an outcry of fear, "Hold on there," which were the only words or outcry heard. That Mr. Ward's body was found lying across the track, between and parallel with the ties, his head having been cut off on one rail and his left foot partially run over on the opposite rail; that neither the track, the conditions of his body or his clothing, or the car indicated his having been pushed or dragged along the bridge at all. The dust from the ties was not disturbed, back of where his body was found, and no clothing was disarranged except the shoe and neckwear where his head was cut off; that there were marks on his head that might indicate that he fell so that his head struck upon the track in a way to render him insensible at once."

There was, as must be seen, nothing certain as to the manner of Ward's death, but it must also be seen that there was circumstantial evidence from which a jury might reasonably infer that he met his death in the way alleged in the declaration. This being so, the question was for the jury, although there was ground for an opposing inference. *Scofield's Admr.* v. *Ins. Co.,* 79 Vt. 161; *Tracy* v. *R. Co.,* 76 Vt. 313; *Clark* v. *Assurance Co.,* 72 Vt. 458; *Lazelle* v. *Newfane,* 69 Vt. 306.

It is contended that the observation car referred to was a locomotive, and that, therefore, the motion for a verdict should have been granted, even if, as the court holds, there was evidence tending to show that Ward met his death in the way alleged, because the policy provided that there could be no recovery for injury or death "while or in consequence of riding in or on a locomotive." The conveyance in which Ward rode was described by various witnesses, and a photograph of it was received in evidence and made a part of the exceptions. It appears that it consisted of a locomotive with a cab built over it, and on the whole we consider that in riding in this cab Ward was riding in or on a locomotive. But if, as there was evidence fairly tending to show, riding on such an observation car or locomotive as the "Nehasane" was a mode of travel covered by the insurance of Ward in travelling in his occupation as stated in writing, then the printed exception which is now under con-

sideration was an inconsistency and would not operate to defeat recovery. This was the view taken by the trial court, and is sustained by reason and authority. *Mascott* v. *Ins. Co.,* 69 Vt. 116; *Carlin* v. *Ins. Co.,* 57 Md. 515, 40 Am. Rep. 440; *Hall* v. *Ins. Co.,* 58 N. Y. 292; *Collins* v. *Ins. etc. Co.,* 79 N. C. 279, 28 Am. Rep. 322; *Whitemarsh* v. *Ins. Co.,* 16 Gray 359; *Maril* v. *Ins. Co.,* 95 Ga. 604, 30 L. R. A. 835; *Wheeler* v. *Ins. Co.,* 62 N. H. 450, 13 Am. St. Rep. 582.

If the occasion or cause of Ward's death was his walking or being on the roadbed of the railway, the plaintiff could not recover, since, if for no other reason, the declaration alleged a different occasion or cause of death. But as there was evidence fairly tending to show that the occasion or cause of death was as alleged in the declaration, and not walking or being on the roadbed, a verdict could not be directed on a ground which assumed that the accident was not caused as alleged in the declaration. *Bass* v. *Rublee,* 76 Vt. 377.

Again a verdict could not be directed for the defendant on the ground that Ward was killed in an occupation or exposure more hazardous than that in which he was insured, for, to reiterate in substance what has been said, there was evidence fairly tending to show that he was killed while in the occupation in which he was insured.

All the grounds of the defendant's motion for a verdict have been stated and given consideration, and the result of such consideration is a holding that the motion was rightly overruled.

Among other things the court charged the jury as follows: "But the policy insured Mr. Ward as a contractor and builder, in the office and travelling, and it is claimed on the part of the plaintiff that he was travelling at the time he was injured— travelling as a contractor and builder engaged in railroad work, and that he was using a usual and ordinary means of travel in that occupation. Now if that is so, the exception I have spoken of would not save the company, because if they having insured him as a contractor and builder, knowing through their agent that he was engaged, and had been for years, as a contractor and builder in railroad work as well as other work, and insured him while he was in his office and travelling, it is to be taken that that was insuring him while he was travelling in the usual and ordinary way of a contractor and builder engaged in rail-

road work.  So that is a question of fact for you to consider,—was he at the time this accident occurred travelling as a contractor and builder engaged in railroad work in the usual and ordinary way of travel for one in that occupation, or in a usual and ordinary way?  If you find that to be so by a fair balance of testimony, then the plaintiff is entitled to recover notwithstanding this provision that relieves the company from liability where the accident occurs in consequence of the assured riding on a locomotive.''

The defendant excepted as follows: ''We are desiring exception as to what the court said, 'if he was insured' (I haven't the language) 'if he was insured as a contractor and builder and was travelling as a contractor and builder, it would not save the company.'  It was the expression you used last,—that portion of the charge you have referred to.''  The defendant treats this general exception as applying to all that was said in the passage quoted, and insists that it assumes that the defendant insured Ward as a working contractor.  But in speaking of Ward's ''work'' the court very clearly meant nothing more than his ''occupation.''  This portion of the charge is also criticised on the ground that it left the case for the jury on certain claims of the plaintiff.  But a reading of the whole charge shows that the case was submitted with entire fairness.  In one respect there was a possible shortage in the instruction quoted, and this the court supplied by recalling the jury, referring to the passage quoted and saying to the jurymen: ''I should have added to that, 'and provided also that he was at that time in the pursuit of that occupation, engaged in that occupation.'  If he was out on a pleasure trip, of course what I have said would not be true. It occurred to me after you retired that I had not included that; so upon that branch of the case it will be necessary for you to find that he was at the time the accident occurred engaged in the occupation in which he was insured as a contractor and builder and travelling on that business.''  After the charge was so modified the defendant took no exception.  The exception to the charge avails nothing.

This policy was called an $11,000 combination policy.  According to its provisions, if the death of Ward was accidental and had occurred while he was riding as a passenger in a car provided for passengers carried for com-

pensation, the company would have been obliged to pay the plaintiff the sum of $11,000, but the plaintiff's claim being, and his evidence having a tendency to show, that Ward's death was the sole result of accidental means while he was in the pursuance of the occupation in which he was insured, but not while he was being carried as a passenger for compensation in a regular passenger car provided for that purpose, the defendant, if found liable, was under obligation to pay not $11,000 but $5,000. Accordingly the declaration here went for the smaller sum, and the verdict was therefor, the matter of interest being taken into account.

After verdict and before judgment the defendant moved the court to set aside the verdict. This motion was overruled and the defendant excepted. The grounds of the motion were that there was no evidence tending to support the declaration and that the verdict was against the weight of evidence. The first ground raised a question of law which has already been considered and disposed of. On the second ground, namely, that the verdict was against the weight of evidence, the motion was addressed to the discretion of the trial court, and there being nothing to show that such discretion was not properly exercised no exception lies to the action of the court. *Marcy* v. *Parker*, 78 Vt. 73; *Coolidge* v. *Ayers*, 77 Vt. 448; *Jangraw* v. *Mee*, 75 Vt. 211; *German* v. *R. Co.*, 71 Vt. 70; *State* v. *Peach*, 70 Vt. 283; *Sowles* v. *Carr*, 69 Vt. 414; *Lindsay* v. *R. Co.*, 68 Vt. 556; *Stearn* v. *Clifford*, 62 Vt. 92; *Newton* v. *Brown*, 49 Vt. 16.

No question was raised as to the due execution of the policy, its issue, its renewal from time to time, the payment of premiums, the fact that Ward's death resulted from violent and external means, or as to the proof of death. All the questions fairly raised by the exceptions, and relied on, have been considered.

*Judgment affirmed.*