INTERNATIONAL TRAVELERS' ASS'N v. VOTAW. (No. 1816.)

(Court of Civil Appeals of Texas. Texarkana. June 18, 1917. Rehearing Denied July 28, 1917.)

1. INSURANCE ☞618—ACCIDENT CERTIFICATE —ACTION—VENUE.

Vernon's Sayles' Ann. Civ. St. 1914, art. 4798, provides that mutual assessment accident insurance companies shall be subject only to the provisions of this chapter. Article 4744, which is not a part of chapter 2, authorizes a suit on a policy issued by an accident insurance company to be prosecuted in the county where the beneficiary named therein resided. Held, that provision of article 4798 made article 4744, and other provisions of the statute pertaining to ordinary accident insurance companies not included in chapter 5, inapplicable to mutual assessment accident insurance companies, so that such a company had the right to contract to be sued only in the county specified in the certificate.

2. VENUE ☞32(2)—PRIVILEGE—WAIVER.

Where the record showed that a plea of privilege was filed during the term beginning on the first Monday in July, 1916, without showing that it was called to the attention of the court during that term or during the term beginning the first Monday in September, 1916, nor until December 12, 1916, during the term which began on the first Monday in November, 1916, it does not show that the appellant has not waived its right to insist upon the plea, or that the trial court erred in overruling it.

3. INSURANCE ☞461(1) — ACCIDENT INSURANCE—CONTRACT—CONSTRUCTION.

As a by-law made part of an accident policy, providing that the insurer should not be liable for the indemnity stipulated, if the death resulted, wholly or partially, directly or indirectly, because the insured was acting "as a soldier or sailor while engaged in military or naval service, voluntary or unnecessary exposure to danger or obvious risk of injury or death," was ambiguous, and may be construed to mean either that the insurer would not be liable if the death was due to voluntary or unnecessary exposure, etc., or that it should not be liable if the insurer was acting as a sailor or soldier engaged in "either" military or naval service "or" voluntary or unnecessary exposure, the fact that the death of the insured was the result of voluntary exposure to danger, or obvious risk of injury or death, did not warrant an instruction in favor of the insurer.

4. INSURANCE ☞146(3) — CONTRACTS — CONSTRUCTION.

A policy of accident insurance is to be liberally construed as against the insured and strictly construed against the insurer, and, if a provision is susceptible of two meanings, one of which would operate to relieve the insurer of liability and the other of which would operate to the contrary, the latter construction will be adopted.

5. INSURANCE ☞151(2) — ACCIDENT INSURANCE—APPLICATION.

An application for an accident policy or certificate becomes a part of it when issued.

6. INSURANCE ☞155 — POLICY — CONSTRUCTION.

In construing a policy of accident insurance in absence of evidence to the contrary, it should be assumed that the duties of a general manager and his assistant of a railroad company were the same.

7. INSURANCE ☞377(2) — ACCIDENT INSURANCE—POLICY—CONSTRUCTION.

Where insured under an accident policy, when he applied for insurance, stated his occupation to be general manager for a railroad company, a by-law made a part of the policy, relieving the company of liability for death due to voluntary and unnecessary exposure, etc., would have no application where insured was killed while discharging his duties as manager, or the same duties as assistant manager, of a railway company.

8. INSURANCE ☞377(2) — ACCIDENT INSURANCE—POLICY—CONSTRUCTION.

A by-law made a part of a contract of accident insurance, exempting the insurer from liability if the insured was killed while riding a "motor inspection car," would not relieve the insurer of liability for the death of one insured as general manager of a railroad which occurred while riding in a motor inspection car as part of his duties, since, if it was the duty of such general manager to ride in such cars, insurer was chargeable with notice of that fact.

9. APPEAL AND ERROR ☞1033(5)—REVIEW—HARMLESS ERROR—SUBMISSION OF ISSUES.

In an action on a policy of accident insurance, where the trial court might properly have instructed for the plaintiff on the question of exemption of defendant from liability on the terms of the policy, defendant has no right to complain because of issues refused or submitted on that point.

10. INSURANCE ☞597—ACCIDENT INSURANCE —AMOUNT PAYABLE.

Under a by-law made a part of a policy of accident insurance, providing that payment of benefit thereunder shall become due and payable 90 days after receipt of the proofs provided for, and in case of liability in excess of $1,000, insurer reserved the right to pay such sum in five equal payments, where the insurer did not exercise its option to pay in installments within 90 days after proofs of loss were filed with it, a judgment for the bulk sum of the policy was not erroneous.

11. INSURANCE ☞602—ACCIDENT INSURANCE —FAILURE TO PAY DAMAGES — ATTORNEY'S FEES—STATUTE.

As Vernon's Sayles' Ann. Civ. St. 1914, art. 4746, authorizing, on conditions, a recovery against an accident insurance company of attorney's fees and damages or penalties is not a part of title 71, c. 5, and article 4798 provides that a mutual assessment accident insurance company shall be subject only to the provisions of chapter 5, in an action against such company a judgment for attorney's fees and damages, or penalties, was not authorized.

Appeal from District Court, Harrison County; H. T. Lyttleton, Judge.

Action by Mrs. Lou Votaw against the International Travelers' Association. Judgment for plaintiff, and defendant appeals. Judgment reformed, and as reformed affirmed.

By its certificate issued to Joseph Elmer Votaw July 8, 1912, appellant agreed, in the event of his "accidental death," to pay to appellee, his wife, "in such manner as provided in" and "in accordance with" its by-

laws, the sum of $5,000. Votaw was then general manager for the Marshall & East Texas Railway Company. March 26, 1916, he was assistant general manager for the Memphis, Dallas & Gulf Railway Company. On that day, accompanied by J. R. Page, the railway company's roadmaster, and John T. Dowling, one of its section foremen, he (Votaw) was traveling on a "section motor car" from Clark Junction to Glenwood, in Arkansas. The motor car was moving around a sharp curve in the track at the rate of about 15 miles an hour when Votaw and those with him discovered a log train moving toward them on the track at the rate of about 20 miles an hour. They all jumped from the motor car, and Page and Dowling escaped injury, it seems, but Votaw fell on the track in front of the motor car and was run over and killed by the locomotive pulling the train. Notice and proof of Votaw's death having been furnished to appellant as required by the certificate issued to him, and appellant having failed to pay the indemnity stipulated for therein, this suit against it was commenced by appellee August 17, 1916. In addition to the $5,000 indemnity stipulated for appellee by her suit sought a recovery of 12 per cent. thereon as damages and of $2,000 as attorney's fees she claimed to be entitled to by force of article 4746, Vernon's Statutes. The appeal is from a judgment in her favor for the $5,000 appellant agreed with Votaw to pay, for $1,000 as attorney's fees and for $600 as damages.

One of appellant's by-laws (which were a part of the contract between the parties) was as follows, the particular portions thereof referred to in the opinion being italicized:

"This association shall not be liable to any person for any indemnity or benefit for injuries or disabilities resulting from injuries or for death, or loss of limb, or limbs, or the irreparable loss of the entire vision of an eye or eyes, resulting from an accident to a member which happens while said member is violating any law, or which shall happen on account of, or by reason of, or in consequence of the member being in any degree under the influence of intoxicating liquors or narcotics, or which shall happen on account of, by reason of, or in consequence of, the use, thereof, nor for death of a member occurring through inhaling of gas, voluntarily or involuntarily, consciously or unconsciously, or in case such disabilities or injuries, fatal or non-fatal, shall occur as a result, wholly or partially, directly or indirectly, of any of the following causes, conditions or acts or while the insured member was under the influence of, or affected by any such cause, condition or act, to wit: Disease of all kinds, bodily, or mental infirmity, orchitis, epididymitis, epilepsy, fainting spells, fits, vertigo, lumbago, sleepwalking, intentional or unintentional taking of poison, or from anything accidentally or otherwise taken, administered, injected, absorbed, or inhaled, consciously or unconsciously, contact with poisonous ivy or other poisonous growth or substance, injury resulting fatally or otherwise inflicted by the insured on himself while sane or insane, nor for intentional injuries inflicted on the insured by others, unless such injuries are inflicted for the sole purpose of burglary or robbery (intent to commit burglary or robbery to be established by the claimant), overexertion (unless in a humane effort to save life) wrestling, or in or by reason of any fight, altercation, brawl, quarrel, argument, disagreement, or misunderstanding, participated in or provoked by the insured, dueling, racing or while riding in races, professional ball or football playing, nor while the insured is acting as a sailor or soldier while engaged in military or naval service, *voluntary or unnecessary exposure to danger or obvious risk of injury or death*, or who shall go beyond the limits of that portion of the North American continent lying north of the southern boundary of the United States and south of the sixtieth degree north latitude without the previous consent of said association, signified by indorsement on his certificate or membership, or while the insured was not in the exercise of due diligence for his self-protection, nor for death or disability resulting from intentional or unintentional taking of medicine or drugs, or from mechanical, medical or surgical treatment (operation made necessary by the partial injury for which claim is made and occurring within ninety (90) days from the date of accident excepted) or from the bite or sting of any mosquito, or from the results thereof, or from ptomaine poisoning, or for local or general infections (unless the infection is introduced into, by and through an open wound, which open wound must have been caused by external, violent and accidental means, and be visible to the unaided eye), sunstroke or heat prostrations or results therefrom, freezing, appendicitis, galled foot or feet, or for the disappearance of a member, nor to any beneficiary or member on account of injuries, whether fatal or disabling, of which there is no external visible mark on the body of the insured (paleness, emaciation, evidence of sickness on the body itself not being construed as such marks in case of death, except in case of drowning), *or while riding or as a result of riding a motorcycle, railway motorcycle or railway motor inspection car, or while riding or driving a racing automobile*, or which may result from riding or driving in automobiles, endurance or economy races or contests, or which may result from being an occupant of an automobile being operated at a speed prohibited by law, or which may result from being operated by a driver or chauffeur who is in any degree under the influence of intoxicating liquors or narcotics, or while making or preparing to make an ascension, or as the result of ascending, riding or descending in a balloon, aeroplane or man-lifting kites."

Seay & Seay, of Dallas, and T. W. Davidson, of Marshall, for appellant. R. A. Sexton and Hobart Key, both of Marshall, for appellee.

WILLSON, C. J. (after stating the facts as above). [1, 2] In a plea in due form and filed in due order of pleading appellant asserted a privilege it claimed to be sued only in Dallas county where, alone, it transacted business. The claim was based upon the fact that it was a "mutual assessment accident insurance corporation" without capital stock and without lodges, and, upon provisions in its by-laws, in Votaw's application for the certificate, and in the certificate itself, that any suit thereon should be filed in that county. In its first assignment appellant complains of the action of the court in overruling its said plea. The contention is that, because it was a "mutual assessment accident insurance company" within the meaning of article 4798, Vernon's Statutes, it was not subject to the provision in article 4744, au-

thorizing suit on a policy issued by an "accident insurance company" to be prosecuted in the county where the beneficiary named therein resided. A like contention made by appellant on its appeal against Branum, 169 S. W. 389, was overruled by the Court of Civil Appeals for the Third District; that court holding that the provisions specified in the application, by-laws and certificate were void because in contravention of said article 4744. It is insisted that the conclusion of the court in that case was wrong because of the provision in said article 4798, which is a part of chapter 5, tit. 71, that "mutual assessment accident insurance companies" "shall be subject only to the provisions of this chapter." The argument is that article 4744 did not apply because it was not a part of said chapter 5. Contrary to the conclusion reached in the Branum Case, we think the effect of the provision in article 4798 specified was to make article 4744 and other provisions of statutes relating to ordinary accident insurance companies not included in said chapter 5 inapplicable to a "mutual assessment accident insurance company," and that appellant, therefore, had a right to contract as it did that it should be sued only in Dallas county on certificates it issued. American Ins. Co. v. Collins, 149 S. W. 554. But we think it nevertheless does not appear from the record before us that the trial court erred when he overruled the plea. It was filed during a term of the court which began on the first Monday in July, 1916. There is nothing in the record showing that it was called to the attention of the court during that term, or during the term of the court which began on the first Monday in September, 1916, nor until December 12, 1916, during the term which began on the first Monday in November, 1916. If appellant was not in the attitude of having waived the right it had to insist upon its plea (Aldridge v. Webb, 92 Tex. 122, 46 S. W. 224; Spencer v. James, 10 Tex. Civ. App. 327, 31 S. W. 540, 43 S. W. 556; Watson v. Mirike, 25 Tex. Civ. App. 527, 61 S. W. 538; Creswell Cattle Co. v. Waldstein, 28 S. W. 260; Bonart v. Lee, 46 S. W. 906), it should have seen to it that it so appeared in the record sent to this court.

[3] It will be noted that it was provided in the by-law set out in the statement above that appellant should not be liable for the indemnity stipulated for if the death of the insured was—

"a result, wholly or partially, directly or indirectly, of any of the following causes, conditions or acts * * * to wit * * * while the insured is acting as a sailor or soldier while engaged in military or naval service, voluntary or unnecessary exposure to danger or obvious risk of injury or death."

Appellant insists that it conclusively appeared from the testimony that Votaw's death was due to "voluntary or unnecessary exposure to danger or obvious risk of injury or death" on his part, within the meaning of the by-law, and that the trial court, there-

fore, erred when he refused to instruct the jury to find in its favor. We are inclined to think it conclusively appeared from the testimony that Votaw's death was the result of voluntary exposure "to danger or obvious risk of injury or death," but do not agree, because it was, that the trial court should have instructed the jury as requested. When the provision in the by-law invoked is considered with reference to the language preceding and following it, its meaning is (obviously, we think) ambiguous. It may be construed to mean, as appellant contends it does, that appellant was not to be liable for the indemnity if the death of the insured was due to "voluntary or unnecessary exposure to danger or obvious risk of injury or death" on his part, or it may, perhaps with more reason, be construed to mean that appellant should not be liable if the insured was killed *while acting as a sailor or soldier* engaged in *either* military or naval service *or* voluntary or unnecessary exposure, etc. A rule applying in the construction of such contracts is stated in 1 C. J. 414, as follows:

"It is well settled as a general rule that a policy of accident insurance is to be liberally construed as against the insured, although strictly construed against the insurer. In case there is any ambiguity in the policy the rule is that all provisions, conditions, or exceptions which in any way tend to work a forfeiture of the policy or limit or defeat liability thereunder should be construed most strongly against those for whose benefit they are inserted and most favorably toward those against whom they are meant to operate and this rule is applicable to purely benefit accident policies as well as to the ordinary accident policy. Accordingly the court will adopt the construction most favorable to the insured when a doubt arises in respect to the application, exceptions to or limitations of liability, or clauses creating forfeitures or relating to matters subsequent to the attaching of the liability, the rule being specially applicable to the latter."

[4] And see, as illustrating the rule: Accident Asso. v. Fulton, 79 Fed. 423, 24 C. C. A. 654; Carr v. Ins. Co., 100 Mo. App. 602, 75 S. W. 180. If, as we think it is, the provision is susceptible of two meanings, one of which would operate to relieve the insurer of liability and the other of which would operate to the contrary, the rule would require the adoption of the latter.

[5-7] But if the provision in question should be construed as meaning what appellant contends it does, we still would be of the opinion it did not operate to relieve appellant of liability to appellee. It appears from Votaw's application for the certificate, which became a part of same when it was issued, that he stated his business or occupation to be that of general manager for a railway company. It appeared from uncontradicted testimony on the trial that in traveling as he was at the time he was killed he was engaged in discharging duties he owed a railway company as its assistant general manager. The contrary not appearing from the testimony, we think it should have been assumed that the duties of a gen-

eral manager and his assistant of a railroad company were the same. The application of the provision in question, if construed as appellant contends it should be, should, we think, be limited to "voluntary and unnecessary exposure to danger or obvious risk of injury or death" by Votaw while not engaged in the discharge of duties devolving upon him as general manager for a railway company. Any exposure to danger incurred by Votaw in the discharge of such duties would not have been "unnecessary" in the sense that word must have been used, if the provision was intended to apply to him while acting as manager for a railway company; and clearly, we think, it should not be held that the parties contemplated that appellant should not be liable if the death of Votaw was due to "voluntary" exposure by him to danger in the discharge of the duties of the business his application for the insurance notified appellant he was engaged in. To so hold would be to say appellant was not bound to indemnify against risks it knew it was the insured's duty to incur in his business or occupation and against which, presumably, the insured meant to provide when he applied for the insurance. Therefore, we think it ought to have been assumed that the parties to the contract did not contemplate that the provision in question should apply if Votaw should be killed while discharging the duties of manager for a railway company. 1 C. J. 434 et seq.; 4 Cooley's Briefs on Insurance, 3176 et seq.; Wilson v. Accident Asso., 53 Minn. 470, 55 N. W. 626; Richards v. Ins. Co., 18 S. D. 287, 100 N. W. 428, 67 L. R. A. 175; Ward's Adm'r v. Ins. Co., 80 Vt. 321, 67 Atl. 821; Dailey v. Masonic Mutual Asso., 102 Mich. 289, 57 N. W. 184, 26 L. R. A. 171; Benefit Asso. v. Jackson, 114 Ill. 533, 2 N. E. 414.

[8] What has just been said applies as well to the contention made that a further provision in said by-law exempted appellant from liability if the insured was killed while riding a "motor inspection car." If it was Votaw's duty as general manager for the railway company to ride such cars, as undisputed testimony showed it was, appellant was chargeable with knowledge of the fact (Brink v. Accident Asso., 55 Hun, 606, 7 N. Y. Supp. 847), and should not, we think, have been relieved of liability if Votaw was killed while riding such a car. But it conclusively appeared that Votaw was not riding a "motor inspection car" at the time he was killed, but was riding a "motor section car," which, according to the testimony, was in material respects unlike a "motor inspection car."

[9] It follows from what we have said that we are of the opinion the trial court might properly have peremptorily instructed the jury to find in appellee's favor on the question appellant sought to make as to its liability. And of course it also follows that we therefore think appellant has no right to complain because of issues in that respect which the court submitted, nor because of issues he refused to submit to the jury.

Another one of appellant's by-laws provided as follows:

"A payment on a benefit hereunder shall become due and payable * * * ninety days after the receipt by the secretary at Dallas, Texas, of the proofs herein provided for. * * * In case of any liability in excess of $1,000 incurred hereunder said association reserves the right to pay such claims in five equal payments until the entire claim is paid."

[10] It is insisted that the judgment is erroneous because it is in appellee's favor "for the bulk sum of $5,000," whereas, appellant having pleaded said by-law, the judgment should have provided that the sum be paid in five annual installments. In appellant's appeal against Branum referred to above, the Court of Civil Appeals held to the contrary of the contention appellant makes here on the ground that it must have exercised the option it claimed to pay in installments within 90 days after proofs of loss were filed with it. We concur in the ruling made in the Branum Case and overrule appellant's contention.

[11] The contention made that the judgment, so far as it was for appellee for $1,000 as attorney's fees and $600 as damages, or penalties, was not authorized by law, and therefore is erroneous, will be sustained. As noted above, it was provided in article 4798 that a "mutual assessment accident insurance company" should "be subject only to the provisions" of chapter 5, tit. 71. Article 4746 which authorizes, on conditions specified, a recovery against an accident insurance company of such fees and damages, is not a part of said chapter 5, but is a part of chapter 2 of said title.

The judgment will be so reformed as to award appellee a recovery against appellant of $5,000 and interest thereon from December 12, 1916, and, as so reformed, will be affirmed.