A. G. COOLIDGE, TRUSTEE IN BANKRUPTCY, *v.* LAMSON J. AYERS.

May Term, 1905.

Present: ROWELL, C. J., TYLER, START, WATSON, HASELTON, and POWERS, JJ.

Opinion filed June 2, 1905.

*Bankruptcy—Trover by Trustee—Sale by Preferred Creditor—Evidence—Harmless Error — Silence Equivalent to Assertion—Motion to Set Aside Verdict—Discretion of Trial Court.*

In trover by a trustee in bankruptcy for a piano the transfer of which by the bankrupt to defendant's vendor thereof constituted a preference, but which defendant claimed to have purchased in good faith, for valuable consideration, and without notice, taking from his vendor a sealed bill of sale which defendant put in evidence, and which contained the covenant that the vendor would "warrant and defend the title" against all claims, it was not error to allow defendant, on cross-examination, to answer the questions whether he expected that his vendor would "make him good" in case the suit went against him, and whether he did not consider

his vendor "good for his expenses in and about this litigation" and for any judgment that might be rendered against him therein. "Security" is something which makes the enjoyment or enforcement of a right more secure or certain.

The defendant having testified, on cross-examination, that the piano in question was a three hundred and fifty dollar piano, and that he purchased it for two hundred dollars, the further question whether one hundred and fifty dollars was quite an object, when he got "security" against any trouble about the title, is not subject to the criticism that it wrongly assumes that defendant had received security, for his vendor's covenant to him to warrant and defend the title is such "security."

The answer of a witness that he did not know, could not remember whether he made any such expression *held* to show that the error, if any, in allowing the question to be answered was harmless.

The failure by a party to assert a fact, when it would have been natural to assert it, amounts to an assertion of the non-existence of the fact.

No foundation need be laid for the impeachment of a party to a suit.

As bearing upon the question whether the transfer by the bankrupt to defendant's vendor constituted a preference under the bankruptcy law, it was proper to allow plaintiff to testify that the approximate amount of property which came into his hands as trustee in bankruptcy was $1,600.

Evidence considered and *held* to present a question for the jury in respect of whether the defendant purchased the piano in question in good faith and without notice.

A motion to set aside a verdict as being against the weight of evidence is addressed to the discretion of the trial court, and its action thereon is not revisable.

TROVER for a piano. Plea, the general issue. Trial by jury at the September Term, 1904, Rutland County, *Munson,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. This case has been once before in the Supreme Court. See 76 Vt. 405.

Sometime in the fall of 1899, Marvin McClure, the bankrupt, caused a McPhail piano belonging to McClure to be placed in the house of defendant Ayers in Windsor. This piano was not sold to defendant, but was placed in his home

for trial in the hope of effecting a sale to him. It appeared that a statement regarding the ownership of the piano was made to Ayers at that time, and what he understood, or ought to have understood about it, in the circumstances, was included in the questions submitted to the jury.

In March, 1900, the McPhail Piano Company, to which McClure was then largely indebted, requested him to turn out to it divers pianos in the possession of various persons, of which the piano in question was one, in payment of the debt of McClure to said company, and McClure refused to do so. The McPhail Piano Company thereupon informed McClure that it should take the pianos and apply the proceeds thereof on said debt, to which McClure replied that he had no objection, but that he would do nothing—the company must take their chances.

In June, 1900, the McPhail Piano Company sent its agent, one Mack, to Windsor, and he there had an interview with defendant, in which Mack represented to defendant that the McPhail Piano Company was the owner of the piano in question, and McClure bought the piano from the McPhail Company for $200, taking from the company a sealed bill of sale of the piano in which was the covenant to defend the title which is recited in the opinion.

Prior to December, 1900, the McPhail Piano Company took possession of a number of other pianos placed by McClure. It was not claimed that this was by virtue of any previous transfer or permission. In December, 1900, with knowledge of such taking, McClure executed to the McPhail Piano Company a written release, under seal, of all claims and demands against it. In January, 1901, McClure was adjudged a bankrupt, and in the following May the plaintiff was appointed trustee of the bankrupt estate.

The plaintiff claimed that defendant was liable in this action because he knew, or had reason to know that the piano in question was the property of McClure when he bought the same, June, 1900. This was denied by the defendant, who claimed that he acted in good faith, and bought the piano for a valuable consideration, without knowing or having reason to know that it was not the property of the McPhail Piano Company.

*C. H. Stebbins, J. C. Enright* and *E. R. Buck* for the defendant.

*Butler & Moloney* for the plaintiff.

WATSON, J.   The contract of sale under seal containing a warranty of title from the McPhail Piano Company to the defendant was introduced in evidence by the defendant. The defendant's testimony on cross-examination tended to show that the company was defending the suit. In connection with this testimony the plaintiff was permitted to ask defendant, subject to objection and exception, whether he expected that the company would make him good in case the suit went against him. Also whether he did not consider the company good for his expenses in and about this litigation, and for any judgment that might be rendered against him therein. Each of these questions was answered in the affirmative. This was not error. Since the contract of purchase introduced in connection with the defendant's testimony in chief contained a covenant that the company would "warrant and defend the title" against all claims, it was proper cross-examination to show the defendant's understanding of his relation to the case under the contract as between him and the company. This testimony when taken with the other evidence showing defendant's conduct touching the matter since the commence-

ment of this suit had a bearing on the question whether he took the property in good faith, which was declared to be a material question when this case was previously before this Court.   76 Vt. 405, 57 Atl. 970.

The defendant testified in cross-examination that it was a three hundred and fifty dollar piano and that he got it for two hundred dollars.   He was then asked, subject to exception, whether one hundred and fifty dollars was quite an object, when he got security against any trouble about the title. It is argued that this question assumed that defendant had received security, a fact which had not been shown by evidence, by reason whereof it was improper in substance.

One definition of the word *security* is, that it is something which makes the enjoyment or enforcement of a right more secure or certain.   Rapalje & Law, Law Dict.   Thus defined, we think the covenant to the defendant to warrant and defend the title is security to him, and that the question is not subject to the criticism made.

McClure, the bankrupt and a witness called by the plaintiff, was recalled by the defendant for the purpose of laying a foundation for impeachment.   For this purpose his attention was called to his testimony given at the former trial of this case, in which it appeared that the witness, in an interview with a representative of the McPhail Piano Company in December, 1900, on being informed that the company had taken the pianos, sold them, and applied the same on his account, said he was pleased to learn that fact.   In further examination by plaintiff's counsel, the witness testified that he meant that he was pleased to learn there might be a balance which would be payable to him from the sale of the pianos, and not that he was pleased to learn that they had taken them.   In continuation of this examination the witness was asked, subject to exception, whether he ever gave the com-

pany to understand that it was gratifying to him to have them take the pianos. He answered that he didn't know; couldn't remember whether he made any such expression to them or not. Assuming the question to be objectionable, the exception is without avail, for the answer was harmless.

The defendant gave testimony in his own behalf. In relating what was said and done between himself and the agent of the company at the time he purchased the piano, he stated among other things that the agent told him that the McPhail company had always owned the piano. In rebuttal the plaintiff was permitted to show that at the former trial in giving his testimony concerning the same occasion, the defendant did not testify that the agent so told him. The defendant excepted on the ground that he had not been asked regarding his former testimony by way of laying a foundation for such impeachment. It is a general principle of evidence that a failure by a party to assert a fact when it would have been natural to assert it, amounts in effect to an assertion of the non-existence of the fact. Wigmore, Ev. § 1042. Unlike the case of a mere witness, in seeking to impeach a party by showing such self-contradiction, no foundation therefor need be laid. Wigmore, Ev. § 1051.

The plaintiff testified in rebuttal, under exception, that the approximate amount of property which came to his hands as trustee in bankruptcy was $1,600. This evidence was material on the question of whether the transfer by McClure to the McPhail Piano Company constituted a preference under the bankruptcy law, and it was within the discretion of the court to admit it then even though not strictly in rebuttal.

At the close of the evidence the defendant moved for a verdict on the ground that there was not sufficient evidence to warrant a verdict for the plaintiff, and to the overruling of the motion defendant excepted. It is said in the defendant's

brief that the only question for the jury was whether the defendant was an innocent purchaser for value. We do not understand that any question was made but that he paid a valuable consideration. Hence, from the defendant's point of view the material question for the jury was whether the defendant took the property under his purchase in good faith and without notice. Bearing upon this question with more or less force as evidence were many facts and circumstances with inferences to be drawn therefrom, concerning which reasonable men might differ. It was therefore a question for the jury, and the motion for a verdict was properly overruled. *Tracy* v. *Grand Trunk R'y Co.* 76 Vt. 313, 57 Atl. 104.

The overruling of the motion to set aside the verdict as being against the evidence was discretionary with the trial court and not revisable here. *Jangraw* v. *Mee,* 75 Vt. 211, 54 Atl. 189.

*Judgment affirmed.*