DENNIS MAHONEY'S ADMR. *v.* RUTLAND RAILROAD CO.

October Term, 1904.

Present: ROWELL, C. J., MUNSON, START, WATSON, and HASELTON, JJ.

Opinion filed January 26, 1906.

*Master and Servant—Injuries to Servant—Concurrent Negligence of Vice Principal and Fellow Servant—Sufficiency of Evidence.*

In an action for the death of a railroad engineer, caused by the collision of a regular train with a train running on special orders, evidence *held* insufficient to show negligence on the part of the train dispatcher.

It is the duty of a railroad company to exercise, through some system of rules and service, a reasonably efficient supervision of its tracks and trains, with a view to lessening the perils incident to the operation of its complicated organization by fallible agencies.

An engineer on an extra train received completed orders from the train dispatcher at 5:06 to proceed to the next station south and immediately entered his time of leaving at 5:10 in a register kept for that purpose and which lay close to the local telegraph operator. The telegraph operator failed to transmit the report of the departure to the train dispatcher in accordance with the rules of the railroad company. A regular north bound train left the station to which the extra was running at 5:18. The stations were only about seven miles apart, and the two trains collided, thereby causing the death of the engineer on the regular train. *Held*, that the failure of the telegraph operator to report the departure of the extra train, so that the train dispatcher could have held the regular train at the south station, was the proximate cause of the accident.

CASE for negligence. Plea, the general issue. Trial by jury at the March Term, 1904, Rutland County, *Tyler*, J., presiding. Verdict and judgment for plaintiff. The defendant excepted.

Plaintiff's intestate was the engineer on the engine drawing the "Flyer." On January 2, 1903, Cowee was the engineer running engine numbered 192, which was drawing a train from Rutland to Shelburne, and one Parris was the conductor of said train. This train left Rutland on said day about 7:30 o'clock A. M., under an order of the train dispatcher to run extra to Middlebury. On its arrival at Middlebury, it received another order to run extra to Burlington. This train was distributing salt and coal to stations from Rutland to Shelburne. It reached Shelburne about 3:30 P. M., and on completing its work at that station would return to Rutland; but it was necessary for Cowee to turn his engine, take water, and clean his fire before starting back to Rutland, and, as there was no turn-table at Shelburne, it was decided to run down to Burlington, which was the station next north from Shelburne. Before leaving Shelburne for Burlington, Parris and Cowee consulted the time-table 'of regular trains and found that trains numbered 21 and 27, which were scheduled on said time-table and were then moving north, were then overdue, and had not then arrived at Shelburne, and that train numbered 65 on said time-table and known as the "Flyer" was moving north, and was due to leave Shelburne at 5:18 P. M. Cowee went to Burlington with his engine 192, having with him on his engine one Chase as fireman and one Cockran as brakeman, and went to the freighthouse, which was situated in the freightyard, and which was the proper place to report his arrival and to ask for orders, if any were needed. He registered his arrival at Burlington at 4:50 P. M., in a book kept at said freighthouse for that purpose; and then asked the train dispatcher at Rutland, through Tynan the telegraph operator at Burlington, for orders.

Said train dispatcher thereupon sent to Cowee the order which is quoted in the opinion, and which was taken off the

wires by Tynan, read by him to Cowee, repeated back by Tynan to the train dispatcher, who gave the O. K. signal and made the order complete at 5 :06 P. M., and Tynan then delivered a copy of the order to Cowee, who thereupon registered in the book aforesaid, under the column headed "departure," the figures "5 :10." This entry of departure was not reported to the train dispatcher at Rutland until after midnight, as the collision broke down the wires so that they were not available till near midnight. Cowee with his engine 192 left Burlington for Shelburne at 5 :10 P. M., or as soon thereafter as he could get off. The "Flyer" left Shelburne at 5 :18 P. M. The distance from Burlington to Shelburne is between six and one-half and seven miles. At a point about one and one-third miles north of Shelburne the "Flyer" collided with Cowee's said engine, and thereby plaintiff's intestate and his fireman, on the engine drawing the "Flyer," and said Cowee were instantly killed, and said Chase and Cockran received injuries whereof they died within an hour or two after the collision. No claim was made that plaintiff's intestate was in fault in any respect.

At the close of the evidence defendant moved for a verdict on the ground that the evidence did not show any negligence of defendant which caused the death of plaintiff's intestate; and if such death was caused by the negligence of Cowee, or by that of Tynan, or by that of both combined, that both Cowee and Tynan were fellow servants of Mahoney; and that the negligence of Cowee, in moving his engine onto the main line in violation of the rules and of the law of the State, was the proximate cause of Mahoney's death.

The court overruled this motion, to which defendant excepted.

*H. H. Powers, P. M. Meldon,* and *F. S. Platt* for the defendant.

Cowee was the fellow servant of Mahoney. Cowee's negligent act was not authorized by the defendant, and was the proximate cause of the accident; therefore defendant's motion for a verdict should have been granted. 2 Labatt, Master and Serv. 1364, 1758-1765; *Howard* v. *Denver & R. G. R. R. Co.,* 26 Fed. 837; *Oakes* v. *Mase,* 165 U. S. 363; *B. & O. R. R.* v. *Camp,* 65 Fed. Rep. 952; *Railway Co.* v. *Clark,* 6 C. C. A. 281; *Illinois C. R. R.* v. *Bentz,* 99 Fed. Rep. 657; *Oregon Short Line & U. N. Ry. Co.* v. *Frost,* 74 Fed. Rep. 965; *McKaig* v. *Northern Pac. R. Co.,* 42 Fed. Rep. 288; *Northern Pac. Ry. Co.* v. *Dixon,* 194 U. S. 338.

It is the master's duty to use proper diligence in selecting competent servants. He does not *warrant* competency. *Baulec* v. *R. R. Co.,* 59 N. Y. 356; *Baltimore Elev. Co.* v. *Neal,* 65 Md. 438; *Reiser* v. *R. R. Co.,* 152 Pa. St. 38.

The presumption is that Tynan was competent. *Hermann* v. *Port etc. Co.,* 71 Fed. 853; Elliott Railroads, § 1286.

*Butler & Moloney* for the plaintiff.

It is the duty of the master to use reasonably careful supervision, with a view of eliminating unnecessary perils from the business. *Noyes* v. *Smith,* 28 Vt. 62; *Houston* v. *Brush,* 66 Vt. 349; *Davis* v. *C. V. R.,* 55 Vt. 84; *McGovern* v. *C. V. R. Co.,* 123 N. Y. 281; *Chicago etc. R. Co.* v. *Taylor,* 18 Am. Rep. 625; *Galveston etc. R. Co.* v. *Smith,* 76 Tex. 611; *Darrigan* v. *R. R. Co.,* 52 Conn. 285; *Mo. etc. R. Co.* v. *Elliott,* 18 Am. & E. R. R. Cas. N. S. 732; *Hawkins* v. *R. R. Co.,* 142 N. Y. 421.

The local telegraph operator was a vice-principal. *Frost* v. *Oregon etc. R. Co.,* 69 Fed. 936; *Madden* v. *C. & O. R.*

*Co.*, 57 Am. Rep. 698; *Sheehan* v. *New York etc. R. Co.*, 91 N. Y. 332; *Pittsburg, etc. R. Co.* v. *Henderson*, 37 Ohio St. 549; *McLeod* v. *Ginther's Admr.*, 80 Ky. 399; *Hunn* v. *Mich. Cent. R. Co.*, 41 A. & E. R. C. 452; *G. T. R.* v. *Cummings*, 106 U. S. 700; *C. & N. W. R. Co.* v. *Sweet*, 45 Ill. 197; *Felton* v. *Harbison*, 104 Fed. 737; *Madden* v. *C. & O. R. Co.*, 57 Am. Rep. 698.

MUNSON, J.   The court treated the train dispatcher as a vice principal of the defendant, and no question was or is made as to the correctness of this view.   The court definitely instructed the jury that Cowee, the engineer of the extra train, was a fellow servant of plaintiff's decedent, and in connection therewith explained the rules applicable to that relation.   The case was submitted upon grounds which assumed that Tynan, the telegraph operator at the Burlington freightyard, was also a fellow servant of the deceased.   The only questions left to the jury regarding Tynan were whether he was a competent operator; and if not, whether his incompetency caused the collision; and if it did, whether the defendant was negligent in employing him.   If there was a failure in this connection to distinguish sufficiently between a mere act of neglect and the result of incompetency, no exception was taken to it.

The only other question submitted was whether the dispatcher was negligent in not taking further action after completing the order which allowed Cowee to run south from Burlington; and the only bearing given to the question of Tynan's competency was upon his failure to report Cowee's departure, and the effect of that failure on the action and responsibility of the dispatcher.   The order was received by Tynan at five o'clock, and was thereupon made known to Cowee and repeated to the dispatcher, but was not made complete and effective by the dispatcher's reply until 5:06.   The

north bound train known as the "Flyer" was due to leave Shelburne at 5 :18.    Cowee entered his time of leaving as 5 :10, in a register that lay close by Tynan.    The rules of the defendant required its operators to promptly record and report to the train dispatcher the time of departure of all trains. Tynan did not attempt to report Cowee's departure before 5 :18.

The plaintiff contends that the dispatcher's delay of nearly six minutes in completing the order, in connection with the Flyer's time of leaving Shelburne, produced a situation which made it his duty to give further instructions; that it was at least his duty, when he failed to receive a speedy report of Cowee's departure, to inquire in regard to it; and that in any event, if Tynan had promptly reported Cowee's time of leaving as registered, the dispatcher could have held the Flyer at Shelburne and prevented the collision.    The court gave no definite construction to this order, and no instruction as to what it gave Cowee the right to do, but left it for the jury to say whether the dispatcher ought to have anticipated that Cowee would leave when the order was made effective, and have held the Flyer at Shelburne.

The defendant contends that Cowee's departure was in direct violation of the order when read in connection with the rules, and that there was nothing in the situation that called for further action on the part of the dispatcher.    The order received by Cowee was as follows: "Engine 192 will run extra Burlington to Rutland; will meet train 21 at Vergennes and 27 at New Haven Junction."    This order is in the form which the rules prescribe for extra trains, and under the form as embodied in the rules is the following direction:    "A train receiving this order * * must keep clear of all regular trains, as required by rule."    Rule 86 provides that an inferior train must keep out of the way of a superior train; and Cowee's

train was inferior to the Flyer.  So this was not an order for Cowee to leave Burlington at once, or at any particular time. It operated merely as a clearance, which permitted him to leave subject to the rule.  It authorized him to run from Burlington to Rutland, going from station to station as he might be able to without getting upon the schedule time of regular trains.  The dispatcher had a right to assume that the train would be run in this manner, unless there was something in the situation as known to him which ought to have led him to expect the contrary.

We find nothing in the circumstances disclosed by the evidence that tends to charge the dispatcher with a further duty. The fact that the order was sent six minutes before it was put in force could not have been expected to confuse a competent engineer.  The dispatcher could properly assume that the engineer would determine his action with reference to the time left available by the completed order.  The distance from the Burlington freightyard to Shelburne is not less than six and one-half miles.  An extra is not only required to keep off the time of regular trains, but is required to allow five minutes at the place of meeting for taking the siding and closing the switch.  This required that Cowee be at Shelburne at 5:13, and making the least possible allowance for getting started after the order was made complete, it would require a run of over a mile a minute; and if a use of three of the five minutes allowed for side-tracking had been contemplated, it would then have required a speed of over forty miles an hour. But the dispatcher was not bound to anticipate such a gross violation of the five minute rule, and without this it is clear that ordinary caution could not have anticipated a departure. Moreover, the question whether a train of this character can get off in season to reach another station within the time al-

lowed by the rules will often depend upon local conditions which are known to the trainman in charge, but cannot be known to the dispatcher. These may include the location of the train in the yard, the number of switches to be passed in reaching the main track, and the condition of the yard as regards other movements. Inasmuch as an extra is required to protect itself against regular trains, it is evident that the starting of such a train must be left, within proper limits, to the judgment of the one in charge of it. In these circumstances, there was nothing in the failure to receive a report of Cowee's departure to excite the dispatcher's apprehension. So we find nothing in the evidence that tends to show negligence on the part of the dispatcher.

It remains to consider the bearing of Tynan's conduct upon the question of liability. There was evidence tending to show that Tynan was ignorant of what the rules required of him in regard to reporting the departure of trains, and that the defendant was negligent in failing to ascertain it. This required the submission of the case to the jury, if there was evidence tending to show that the accident was due to Tynan's omission operating concurrently with Cowee's negligence. So it is necessary to inquire as to the results that would probably have flowed from a prompt report of Cowee's departure as registered.

If Tynan had acted at 5 :08, this would have given ten minutes in which to stop the Flyer at Shelburne; an allowance which would probably have covered all chances of delay in the dispatcher's office and at Shelburne. There was evidence tending to show that one purpose of the rule requiring a prompt report of departures is to keep the dispatcher constantly advised of the actual condition of the main line, and that one benefit contemplated from the requirement of prompt trans-

mission is the additional protection thus afforded. It is clear that if the dispatcher had received information which indicated that Cowee was actually leaving for Shelburne on the Flyer's time, it would have been his duty to take measures to prevent the threatened collision. The rules governing the movement of the train would not justify his failure to act, if he had knowledge that the rules were being ignored. So the question will be, what would the dispatcher have understood from the report, if it had been made? It seems that it is customary for trainmen acting in these circumstances to enter their time of departure somewhat in advance of the time of registering, to give them time to get to their trains and work out to the main line; and that unexpected delays sometimes prevent their getting off within the time they allow. But if Cowee was intending to wait for the Flyer, his time of departure depended upon a certainty and not a contingency. The time he set for leaving was 5:10. The Flyer was due at Burlington station, about one-fourth of a mile north of the freightyard, at 5:30. So the time given for leaving was at least 18 minutes before he could leave, if he was to wait for the Flyer. It is to be presumed that on receiving such a report, the dispatcher would have acted prudently and have done his duty. Ought he to have understood that Cowee had entered this time for leaving expecting to wait for the Flyer? Or ought he to have understood that he was leaving for Shelburne in disregard of the rules? This was a matter for the jury, and justified the submission of the case, unless it be held that the negligence of Cowee was the sole proximate cause of the accident and that of Tynan only a remote cause.

We think that upon the case which the plaintiff's evidence tended to establish, Tynan's failure to report was one of two causes which concurred directly in producing the accident. It

is true that the defendant had no part in creating the dangerous situation from which the accident resulted. That situation was developed by the negligent act of Cowee. But it was the defendant's duty to exercise, through some system of rules and service, a reasonably efficient supervision of its track and trains, with a view to lessening the perils incident to the operation of a complicated organization by fallible agencies. The first neglect consisted in Cowee's leaving, but the neglect of Cowee and the neglect of the defendant afterwards came into a concurrent operation which continued until the injury was received,—Cowee running on the Flyer's time, and the dispatcher improperly left in ignorance of it when a knowledge of it would have enabled him to prevent the accident. Into the situation which existed at the time of the collision there had come the further element of the dispatcher's failure to hold the Flyer at Shelburne when he ought to have had information that an opposing train was on the track. So Tynan's failure was a proximate cause of the accident.

The motion to direct a verdict for the defendant was properly overruled, but the court erred in its submission of the questions touching the dispatcher's duty.

*Judgment reversed and cause remanded.*