ROBERT T. LINCOLN *v.* CENTRAL VERMONT RAILWAY COMPANY.

Special Term at St. Johnsbury, April, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, and HASELTON, JJ.

Opinion filed May 12, 1909.

*Master and Servant—Injury to Servant—Evidence—Opinion of Non-expert—Qualification of Expert Witness—Finding of Trial Court—Conclusiveness—Fellow Servants—Maintenance of Railroad Track—Brakeman and Sectionmen—Concurrent Negligence of Master and Fellow Servant—Refusal to Set Aside Verdict—Review—New Trial—Discretion of Trial Court.*

In an action for injuries to a brakeman by the derailment of a freight car while rounding a curve, the jury having viewed the place of the accident, a non-expert witness was properly allowed to testify as to the elevation of the outer rail at the time of the accident and shortly before, and how its elevation then compared with its elevation at the time of trial.

Where the finding of the trial court that a witness was qualified to testify as an expert was based on evidence, and involved no erroneous conception of the law, it is not revisable.

Although a section foreman and the sectionmen under him are, as between themselves, fellow servants, yet the section foreman is not the fellow servant of a brakeman.

The duty of properly inspecting, preserving, and maintaining a railroad track is but the continuance of the master's duty of proper construction, and a servant charged with the duty of maintaining the track represents the master, and his negligence in the discharge of that duty is the negligence of the master, and not that of a fellow servant.

Where a servant is injured through the concurring and proximate negligence of the master and a fellow servant, the negligence of the fellow servant will not defeat recovery.

In an action for injuries to a brakeman by the derailment of a freight car while rounding a curve, evidence considered and *held* to show that the curve was defectively constructed in that the outer rail thereof was lower than the inner rail.

Claims that a verdict is "against the evidence" and "against the weight of the evidence" are identical.

A motion to set aside a verdict because against the weight of the evidence, and because it is excessive, is addressed to the discretion of the trial court, and is not reviewable, unless it appears that the court failed to exercise its discretion, or abused it.

A verdict may be set aside by the trial court if it appears to have resulted from passion, prejudice, or corruption, or from a disregard of the evidence.

Remarks of the trial court in denying a motion to set aside a verdict on the ground that it is excessive considered, and *held* that by the remark, "we are agreed that it isn't in a legal sense excessive," the court meant only that the verdict did not appear to have been influenced by passion, or prejudice, or by anything except a just consideration of the evidence.

CASE for negligence. · Plea, the general issue. Trial by jury at the April Term, 1908, Windham County, *Powers*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*C. W. Witters, J. K. Batchelder,* and *C. H. Darling* for the defendant.

Defendant was entitled to a charge in accordance with its fourth and eighth requests. Plaintiff and the trackmen, in the circumstances of this case, were fellow servants. *Clifford* v. *Old Colony R. R.,* 141 Mass. 564; *Lanning* v. *Railroad,* 49 N. Y. 521; *Farwell* v. *B. & W. R. R.,* 4 Met. 49; *Davis* v. *Railroad,* 55 Vt. 84; *Kiley* v. *Rutland R. R.,* 80 Vt. 536; *Gilshannon* v. *Railroad,* 10 Cush. 228; *King* v. *Railroad,* 9 Cush. 112; *Gilman* v. *Railroad Co.,* 92 Mass. 233; *Seaver* v. *Railroad,* 14 Gray 466; *Holden* v. *Railroad,* 125 Mass. 268; *Peterson* v. *N. Y., N. H. R. R.,* 59 Atl. 502; *Swarts* v. *Great Northern R. R.,* 101 N. W. Rep. 504; *Henry* v. *Ann Arbor R. R. Co.,* 103 N. W. 846; *Kane* v. *Erie R. R. Co.,* 133 Fed. 681; *Johnson* v. *B. & M. R. R.,* 78 Vt. 349; *Garrow* v. *Miller,* 72 Vt. 284; *Lambert* v. *Missisquoi Pulp Co.,* 72 Vt. 278; *Kerr* v. *R. R. Co.,* 25 A. & E. R. R. Cas. 507; *R. R.* v. *Harrington,* 21 Ry. Cases 571; *Neagle* v. *Ry. Co.,* 185 N. Y. 270; *Brick* v. *Ry. Co.,* 98 N. Y. 211; *Sherrin* v. *R. R. Co.,* 133 Mo. 378; *Shugard* v. *Union Traction Co.,* 51 Atl. 325; *Weaver* v. *R. R. Co.,* 52 Atl. 30; *Mulherrin* v. *R. R. Co.,* 81 Pa. 366; *Martin* v. *Atchison R. R. Co.,* 166 U. S. 399; *McPeck* v. *Central Vt. R. R. Co.,* 79 Fed. 590; *Wright* v. *Southern R. R. Co.,* 80 Fed. 260; *Northern Pacific R. R. Co.* v. *Peterson,* 162 U. S. 346; *Northern Pacific R. R. Co.* v. *Dixon,* 194 U. S. 338; *Heine* v. *Chicago Railroad Company,* 58 Wis. 525; *Brown* v. *People's Gas Light Co.,* 81 Vt. 477; *Harvey* v. *R. R. Co.,* 88 N. Y. 481; *R. R. Co.* v. *Wachter,* 60 Md. 395; *Ford* v. *R. R. Co.,* 117 N. Y. 638; *Walker* v. *R. R. Co.,* 128 Mass. 8.

*Gibson & Waterman* and *Clarke C. Fitts* for the plaintiff.

The trial court properly refused to comply with defendant's fourth and eighth requests to charge. The trackmen were charged with the master's nondelegable duty of furnishing plaintiff a reasonably safe place wherein to work, and therefore, were not his fellow servants. *Wright* v. *Southern Ry. Co.,* 12 Am. & Eng. R. R. Cases 1717; 4 Thompson Neg., 1029, §5014; *Davis' Admr.* v. *C. V. R. R. Co.,* 55 Vt. 84; McKinney on Fellow-Servants, 53; *R. R. Co.* v. *Moore,* 29 Kan. 632; *Houston* v. *Brush & Curtis,* 66 Vt. 331; McKinney on Fellow Servants, 78, 295,

302; Thompson on Neg., §3807; *Ill. Cent. R. R. Co.* v. *Sanders,* 11 Am. & Eng. R. R. Cases, 861; *St. Louis etc. Ry. Co.* v. *Twohey,* 16 Am. & Eng. R. R. Cases 454; *Hough* v. *R. R. Co.,* 100 U. S. 213; *Ford* v. *R. R. Co.,* 110 Mass. 240; *Anglin* v. *R. R. Co.,* 60 Fed. 553; *McGowan* v. *R. Co.,* 123 N. Y. 280; 1 Labatt, Master and Servant; *Wilkie* v. *Raleigh & C. F. R. Co.,* 19 Am. & Eng. R. R. Cases 295; *Daly* v. *Kiel,* 22 Am. & Eng. R. R. Cases 320.

The Supreme Court will not set a verdict aside on the ground that it is excessive unless it is manifestly so unreasonable that it ought not to stand. *O'Gara* v. *Transit Co.,* 204 Mo. 724, 12 L. R. A. 840; *Worth* v. *Woodland,* 12 Idaho 50, 6 L. R. A. 921; *Morning Journal Asso.* v. *Rutherford,* 1 U. S. 296, 51 Fed. 513; *Pierce* v. *Van Dusen,* 24 C. C. A. 280, 78 Fed. 693; *Battrell* v. *Ohio R. Co.,* 34 W. Va. 232, 12 S. E. 699; *Longan* v. *Weltmer,* 180 Mo. 322, 79 S. W. 655; *Normile* v. *Wheeling Traction Co.,* 57 W. Va. 132, 49 S. E. 1030; *Galveston etc. Co.* v. *Bohan,* 12 Am. & Eng. R. R. Cases 491; *Kalfur* v. *Broadway Ferry & N. Ave. R. Co.,* 12 Am. & Eng. R. R. Cases 850; *Barrette* v. *Carr,* 75 Vt. 425; *Jangraw* v. *Mee,* 75 Vt. 211; *Sowles* v. *Carr,* 69 Vt. 414; *Newton* v. *Brown,* 49 Vt. 16.

HASELTON, J. This was an action of case. The plaintiff was a brakeman in the employ of the defendant company, and on January 1, 1907, while acting as such on the West River Division of the defendant's road, he received injuries which he claims were the result solely of the defendant's negligence. Trial by jury was had. The verdict was for the plaintiff.

The plaintiff's evidence tended to show that on the day named a freight car, upon which he was in the line of his duty, left the track while rounding a curve, carrying him with it, and that so the injuries complained of were received. The plaintiff claimed that at the time of the accident, at the point of the curve where the car left the track, the outer rail of the track was lower than the inner, instead of being higher, as the evidence tended to show it should have been. Before any witness was called there was a jury view of the place of the accident. Thereafter the plaintiff called as a witness one Chamberlain who testified that December 29, 1906, three days before the accident, he noticed that the outer rail of the curve was slightly lower than the inner rail, that it looked about the same on the day of the accident, and that he had observed the elevation of the outside rail on the very

day of the giving of his evidence. He was then asked: ''How does it now compare in elevation to its elevation on the 29th of December, 1906, when you were there or thereabouts?'' Subject to objection and exception the witness answered: ''The outer rail seems a good deal higher comparatively.'' This question and answer were entirely proper. The jury had just been shown how the track looked at the time of the trial and to prevent misapprehension it was proper that they should be told by way of comparison how it differed as to the elevation of the outer rail at the time of the accident and shortly before. The jury view went upon the theory that men of ordinary experience could tell something about such a matter as this, and it was not necessary that the witness should qualify as an expert. It appeared that the witness, though a farmer, had been a carpenter and builder and an amateur surveyor, but if these things had not appeared the evidence would have been proper. A man of ordinary intelligence may testify upon such matters as the settling or heaving of the ground, or a floor, of the inclination of a post, or the variation in diameter of a growing tree. Height and depth, length and breadth, size, shape, quantity, weight, odor, flavor and color, darkness and light and shade, cold and heat, opacity and transparency, dampness and dryness, roughness and smoothness, brightness and dullness, soundness and decay, speed, force, time, noise, direction and distance, are among the things which, in most circumstances, men in general may testify about, and about which they may make comparisons, although their ideas, tastes and standards may differ and their comparisons be crude if not odious. The value of such testimony can fairly be gauged by cross-examination.

The plaintiff claimed that the defendant was negligent in respect to the condition of the track, and that it did not make adequate provision for the repair of the same. On this question the plaintiff called one Kidder as a witness. He testified that he was for eighteen years a bridgeman on the West River Division in question, but that he ceased such employment about nine years before the trial; that while bridgeman he was foreman or second foreman; that in the line of his employment he saw to the laying and altering of the tracks on the bridges and their approaches; that he was familiar with the whole division of the road, and in his work dealt somewhat with tracks and curves, and the fastening together and spiking down of rails, and that

his work acquainted him in a general way with the duties and work of the sectionmen. His testimony tended further to show a present acquaintance with the road, and with the section, about six miles in length, on which the accident happened. The witness was then asked the following question: ''What do you say, from your experience as a railroad man, your knowledge of railroad work, as you have testified, as to whether one section foreman and two men under him is sufficient help to care for that section?'' To this question the defendant objected on the ground that the witness had not shown such knowledge as qualified him to testify as an expert in relation to the matter of the question. The court found him qualified and permitted him to answer. The defendant excepted. However, the evidence had a tendency to qualify the witness and warranted the finding of the court. Since the finding was not arbitrary but was based on evidence and involved no erroneous conception of the law it is not revisable and the exception thereto avails nothing. *Drouin* v. *Wilson,* 80 Vt. 335, 344, 67 Atl. 825; *Morrisette* v. *Canadian Pacific Ry. Co.,* 76 Vt. 267, 273, 56 Atl. 1102; *McGovern* v. *Hays,* 75 Vt. 104, 112, 53 Atl. 326; *Watriss* v. *Trendall,* 74 Vt. 54, 57, 52 Atl. 118; *Maughan* v. *Burns' Est.,* 64 Vt. 316, 321, 23 Atl. 583; *Bemis* v. *Railroad Co.,* 58 Vt. 636, 641, 3 Atl. 531; *Railroad Co.* v. *Bixby,* 57 Vt. 548, 563; *Wright* v. *Williams' Estate,* 47 Vt. 222, 234.

The defendant requested that various instructions be given to the jury. Some of these requests the court did not give and the defendant took exceptions. It is claimed in argument that the court should have complied with the fourth request and with the eighth. These requests were as follows: '' (4) The trackmen were co-laborers with the plaintiff and he cannot recover if his injury was the result solely of their negligence in caring for the track.'' '' (8) If the railroad and its bed were properly constructed at the place of accident, and the accident occurred through no fault of construction but solely by reason of the trackmen or sectionmen neglecting to make such ordinary repairs as they were accustomed to, and as it was their duty to make, the plaintiff cannot recover.'' These requests make no distinction between the section foreman and the sectionmen under him. As between themselves in working together there may have been no distinction; all may well have been fellow servants. *Garrow* v. *Miller,* 72 Vt. 284, 47 Atl. 1087; *Lambert*

v. *Missisquoi Pulp Co.*, 72 Vt. 278, 47 Atl. 1085; *Brown* v. *Gas Light Co.*, 81 Vt. 477, 71 Atl. 204. But as to others the evidence tended to show that this section foreman represented the company. An agent or servant often acts in a dual capacity. Note to *Fogarty* v. *St. Louis Transfer Co.*, 1 A. & E. Ann. Cas. 143. The duty of properly inspecting, preserving, and maintaining a track is but a continuance of the duty of proper construction and, since a corporation can act only by agents, the agent, whatever he may be called, to whom that or a like duty is assigned represents the principal, and his negligence in the discharge of that duty is the negligence of the principal, for it is a duty which cannot be so delegated as to relieve the principal from liability. *Davis* v. *Railroad Co.*, 55 Vt. 84, 45 Am. Rep. 590; *Houston* v. *Brush*, 66 Vt. 331, 29 Atl. 380; *Hays* v. *Colchester Mills*, 69 Vt. 1, 37 Atl. 269; 60 Am. St. Rep. 915; *Morrisette* v. *Canadian Pacific Ry. Co.*, 74 Vt. 232, 52 Atl. 520; *Dunbar* v. *Central Vt. Ry. Co.*, 79 Vt. 474, 65 Atl. 528; *Sias* v. *Consolidated Lighting Co.*, 79 Vt. 224; 64 Atl. 1104; *Kiley* v. *Railroad Co.*, 80 Vt. 536, 68 Atl. 713; *Drown* v. *N. E. Telephone & Telegraph Co.*, 80 Vt. 1, 66 Atl. 801; *Williams* v. *Norton Brothers*, 81 Vt. 1, 69 Atl. 146; *Hough* v. *Railway Co.*, 100 U. S. 213, 25 L. Ed. 612; *Northern Pacific R. Co.* v. *Herbert*, 116 U. S. 642, 6 Sup. Ct. 590, 29 L. Ed. 755; *Texas & Pacific Ry. Co.* v *Cox*, 145 U. S. 593, 12 Sup. Ct. 905, 36 L. Ed. 829; *Baltimore & Ohio R. Co.* v. *Baugh*, 149 U. S. 368, 386, 13 Sup. Ct. 914, 37 L. Ed. 772; *Union Pacific Ry. Co.* v. *Daniels*, 152 U. S. 684, 14 Sup. Ct. 756, 38 L. Ed. 597; *Northern Pacific R. Co.* v. *Babcock*, 154 U. S. 190, 14 Sup. Ct. 978, 38 L. Ed. 598; *Baltimore & Potomac R. Co.* v. *Mackey*, 157 U. S. 72, 15 Sup. Ct. 491, 39 L. Ed. 624; *Union Pacific Ry. Co.* v. *O'Brien*, 161 U. S. 451, 16 Sup. Ct. 618, 40 L. Ed. 766; *Texas & Pacific Ry. Co.* v. *Barrett*, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136; *Texas & Pacific Ry. Co.* v. *Archibald*, 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188; *Choctaw &c. R. Co.* v. *McDade*, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96; *El Paso R. Co.* v. *Vizard*, 211 U. S. 608, 29 Sup. Ct. 210, 53 L. Ed.

The testimony tended to show that at a curve the proper elevation of the outside rail above the level of the inner is a guard against derailment, and such a guard as is necessary to the provision of a reasonably safe place.

13

At the close of the evidence the defendant moved the court to direct a verdict in its favor. The motion was overruled and the defendant excepted. The defendant now claims that the motion should have been complied with on the ground: "That the testimony shows that the derailment was caused by the failure of the sectionmen to make the repairs upon the track and that these sectionmen and the plaintiff were fellow servants." The claim made is equivalent to a claim that there was not evidence tending to show proximate negligence on the part of the defendant, for if there was proximate negligence on the part of a fellow servant with which proximate negligence on the part of the defendant concurred, the negligence of the fellow servant would not defeat recovery. *Mahoney's Admr.* v. *Rutland R. Co.,* 78 Vt. 244, 62 Atl. 722; *Grand Trunk Ry. Co.* v. *Cummings,* 106 U. S. 700, 1 Sup. Ct. 493, 27 L. Ed. 266.

As to the elevation of the outer rail of the curve at the point where the car in question left the track, the testimony of the witness Chamberlain, already referred to, did not by any means stand alone. One Howard testified that he lived about a quarter of a mile from the scene of the accident, that after the accident, but on the same day, he noticed the place and thought the outside rail was the lower, and that a few days thereafter, when the track appeared unchanged, he and the witness Kidder, by the use of a straight edge and a level, found that at the point in question the outside rail was half an inch lower than the other. The witness Kidder who, as has been seen, was a railroad man, testified to the measurements referred to by the witness Howard and his testimony was to the same effect as that of Howard.

One Lowe testified that he went to the scene of the accident the morning after it happened and that there appeared to be little or no elevation of the outside rail.

One Burwell testified that he was at the place of the accident the day on which it happened, that his attention was called to the fact, which he observed, that the outer rail was the lower.

One Sparks testified that he got to the scene of the accident the day of its occurrence and that he noticed that the outer rail was the lower of the two.

One Taft testified that he was at the place in question while Sparks was there, that he could see that the outside rail was lower than the inside along where the car left the track, and that he made his observations by getting down on the ground.

Sparks, it should be said, also testified that he ascertained the relative level of the rails by getting down and looking across the track. This evidence, except that of Chamberlain already treated of, was received without objection, and it certainly had a tendency to show that the track at the time of the accident was not a suitable one.

To say nothing of other testimony on this point, the road master of another road, of long experience as such, a witness called by the defendant, testified, with reference to the time and place of the accident, that if the outer rail was as low as the inside rail ''it would not be right.'' On the question of whether or not the track was in an improper and unsafe condition as the result of some heaving or washing or sinking so recent and sudden that the duty of the defendant to know about it and to make repairs had not arisen the evidence of some witnesses called by the defendant is material.

One Anderson, the conductor of the train on which the plaintiff was brakeman, testified that almost immediately after the accident he went over the place where the car went off, that he did not find anything, that there was no apparent change in the track at that point, and that the track was to all appearance in ordinary condition. This witness had been running over the line in question for a long time.

One Abbott, who was the engineer of the train on which the plaintiff was, testified that after caring for the plaintiff he looked over the track on the curve and the place of the derailment, that he found no cause of the accident and saw no defect in the track, and saw nothing wrong with the track, that as he walked back and forth he could discover no difficulty with the track. He had been an engineer on this line for some time.

One Rouce, who had been a conductor about twenty-one years on the division in question, testified that on the day of the accident he was on a mixed train going in an opposite direction from that in which the plaintiff was going, that his train was flagged as it approached the place of the accident and that he went and looked over the track and didn't see that anything was the matter with it, or that any change had been made in the track by reason of the derailment.

There was other testimony tending to show that the track was substantially as it had been for a very considerable time, and the testimony recited and referred to tended to show

negligence on the part of the defendant itself in not ascertaining and remedying a defect which, as there was evidence tending to show, was the proximate cause of the plaintiff's injuries.

Besides, as has been noted, there was evidence from the witness Kidder, an experienced railroad man, to the effect that the defendant did not furnish, on the section of road which covered the place of the accident, enough sectionmen properly to care for the track. The section foreman, two roadmasters, and an experienced roadmaster from another road were all witnesses in the case, and none of them disputed this evidence of Kidder. In the state of the evidence Kidder's testimony was more than a mere scintilla, and in any view of the fellow servant doctrine the motion of the defendant to have a verdict directed in its favor was rightly overruled. *Scofield's Admx.* v. *Life Ins. Co.,* 79 Vt. 161, 64 Atl. 1107; *Coolidge* v. *Ayers,* 77 Vt. 448, 61 Atl. 40; *Tracy* v. *Grand Trunk Ry. Co.,* 76 Vt. 313, 57 Atl. 104; *Fletcher* v. *Wakefield,* 75 Vt. 257, 54 Atl. 1012; *German* v. *Railroad Co.,* 71 Vt. 70, 42 Atl. 972; *Lindsay* v. *Railroad Co.,* 68 Vt. 556, 35 Atl. 513.

The defendant moved to set aside the verdict on the ground that it was against the evidence, that it was against the weight of evidence, and that it was excessive. The court overruled the motion and the defendant excepted. The claims that the verdict was against the evidence and against the weight of the evidence are one and the same. *German* v. *Railroad Co.,* 71 Vt. 70, 42 Atl. 972; *Coolidge* v. *Ayers,* 77 Vt. 448, 61 Atl. 40.

But if we assume that "against the evidence" was intended to mean "without any supporting evidence" enough has been said in discussing the motion for a verdict to show that a verdict for the plaintiff was supported by evidence and so cannot be disturbed for lack of thereof. *Tracy* v. *Grand Trunk Ry. Co.,* 76 Vt. 313, 57 Atl. 104; *Jangraw* v. *Mee,* 75 Vt. 211, 54 Atl. 189, 98 Am. St. Rep. 816; *State* v. *Peach,* 70 Vt. 283, 40 Atl. 732.

The motion to set aside the verdict on the ground that it was against the weight of evidence and on the ground that it was excessive was addressed to the sound judicial discretion of the court and is not reviewable unless it appears that the court failed or refused to exercise its discretion or abused it. *Ward's Admr.* v. *Preferred Accident Ins. Co.,* 80 Vt. 321, 332, 67 Atl. 821; *Massucco* v. *Tomassi,* 80 Vt. 186, 67 Atl. 551; *Marcy* v. *Parker,* 78 Vt. 73, 62 Atl. 19; *Coolidge* v. *Ayers,* 77 Vt. 448, 61 Atl. 40;

*Jangraw* v. *Mee,* 75 Vt. 211, 54 Atl. 189, 98 Am. St. Rep. 816;
*German* v. *Railroad Co.,* 71 Vt. 70, 42 Atl. 972; *State* v. *Peach,*
70 Vt. 283, 40 Atl. 732; *Sowles* v. *Carr,* 69 Vt. 414, 38 Atl. 77;
*Ranney* v. *Railroad Co.,* 67 Vt. 594, 34 Atl. 810; *Stearns* v. *Clifford,* 62 Vt. 92; 18 Atl. 1045; *Newton* v. *Brown,* 49 Vt. 16;
*Wheatley* v. *Waldo,* 36 Vt. 237.

The cases are referred to, although the principle is familiar,
for the purpose of showing its varied application.    Of the cases
above cited those dealing with motions to set aside a verdict for
an allowance of damages claimed to be excessive are as follows:
*Massucco* v. *Tomassi,* 80 Vt. 168, 67 Atl. 551; *Marcy* v. *Parker,*
78 Vt. 73, 62 Atl. 19; *Ranney* v. *Railroad Co.,* 67 Vt. 594, 32
Atl. 810.

A verdict may be set aside by the trial court if it appears
to have resulted from passion or prejudice or corruption or from
a disregard of the evidence.    *Barrette* v. *Carr,* 75 Vt. 425, 56
Atl. 93; *Averill* v. *Robinson,* 70 Vt. 161, 40 Atl. 49.

And since a motion to set aside a verdict is addressed to the
discretion of the trial court that court must exercise its discretion.    *Massucco* v. *Tomassi,* 80 Vt. 186, 67 Atl. 551; *State* v.
*Newell,* 71 Vt. 476, 45 Atl. 1045; *Ranney* v. *Railroad Co.,* 67 Vt.
594; 32 Atl. 810; *Johnson* v. *Shumway,* 65 Vt. 389, 26 Atl. 590.

The court below gave its reasons for overruling the motion,
and nothing can be more plain than that it exercised its discretion and did it in a way that could leave no room for the suggestion that judicial discretion was in any way abused.    As to
the first ground for the motion the court said: ''If it was left
for us to say we should be obliged to say, just as the jury has
said, that the evidence was for the plaintiff. * * *

* * * It seems pretty plain to us that it (the car) left the rail
on account of a defect in that track, a defect that was plainly
chargeable to the neglect of the defendant.''

The claimed excess of damages is the ground of the motion
chiefly argued, and in argument stress is laid upon the fact
that the court in commenting upon the plaintiff's injuries and
their consequences on the one hand and the amount of damages
awarded by the jury on the other, said of the verdict: ''We are
agreed that it isn't in a legal sense excessive.''    But the context
shows clearly that the court meant no more than that the verdict
did not appear to have been influenced by passion or prejudice
or anything else than such consideration of the evidence as the

jury had a right to give it, and so the court said with fair reference to the testimony: "In this case the evidence tends to show that this young man was put to pretty heavy expenses, having had two amputations and must have suffered a good deal more pain from the injury than he would from an ordinary broken leg or from a leg so broken as to require one amputation. That is an element that the jury were called upon to exercise their judgment in. Then there was an injury to the shoulder which is of more or less permanency. How much, of course, is a matter as counsel have suggested, of more or less conjecture, a matter of judgment. In addition to that there is a curvature of the spine, which testimony tended to show was caused by this accident. * * * Here is a young man, twenty-six years old who, if he lives out his allotted time, is going to be deprived of an earning power that he would otherwise have had, which as argued to the jury, in dollars and cents, if you apply that test to it, amounts up into the thousands." That loss of ability to earn was a factor that entered into the plaintiff's damages is, of course, beyond dispute.

The question before this Court is not how we should have exercised our discretion if we had been in place of the trial court, but it is for us to say whether or not it appears that the trial court withheld or abused its discretion. It does not appear that it did either, and the exception to the overruling of the motion to set aside the verdict avails nothing.

All the exceptions relied on in argument having been considered, the

*Judgment is affirmed.*