WOODSVILLE GUARANTY SAVINGS BANK *v.* ALBERT ROGERS ET AL.

May Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed May 14, 1912.

*Bills and Notes—Strangers Signing on Back—Liability—"Indorsers"—Banks—Officers—Authority—Parol Evidence—Varying Written Instruments—New Trial—Insufficiency of Evidence—Discretion of Court.*

An exception to the refusal of the trial court to set aside a verdict, on the ground that the jury were allowed to consider inadmissible evidence received against the objection and exception of the exceptor, reserves no question.

Where strangers to a promissory note sign their names on its back before delivery they are, *prima facie*, makers, but may show that they are but indorsers and liable only as such.

Evidence that negotiations for a loan by a bank were had in its rooms with one of its directors, who consulted with the other directors, then and there in session as a body, as to the making of the loan, tends to show that the director had authority to act for the bank.

A transcript referred to and made a part of a bill of exceptions, though not made controlling, may be used to supplement the statements in the bill.

Testimony of a witness that the payee of a promissory note told the maker that he could obtain the loan if he would get two "indorsers," and the witness might be one of the "indorsers," and that later the witness and another, who were both strangers to the note, signed their names on the back thereof before delivery, tends to show that the witness assumed only the liability of an indorser, for in law, and by common usage, the word "indorser," when used alone, has a meaning different from the word "maker."

A written agreement that the balance of the proceeds of a foreclosure sale of real estate of the maker of a promissory note should be applied on the note, and that whatever should be collected on another note, owned by said maker and delivered to the payee of the first note, should also be indorsed thereon, is a complete

agreement looking to a future payment on the note, and cannot be contradicted by evidence of a contemporaneous oral agreement exonerating the maker from all liability on the note.

A motion to set aside a verdict because it is against the weight of the evidence, or, which is the same thing, because it is against the evidence, is addressed to the discretion of the trial court, and its decision thereon is not reviewable.

ASSUMPSIT on a promissory note. Plea, the general issue with notice. Trial by jury at the June Term, 1910, Orange County, *Stanton*, J., presiding. Verdict and judgment for defendants, Conant and Flanders. The plaintiff excepted. The opinion states the case.

*Smith & Smith* and *Fred S. Wright* for the plaintiff.

*R. M. Harvey* for the defendants.

Though Conant and Flanders were, *prima facie*, makers, they could show that they were in fact only indorsers. *Barrows* v. *Lane*, 5 Vt. 161; *Knapp* v. *Parker*, 6 Vt. 642; *Flint* v. *Day*, 9 Vt. 345; *Pitkin* v. *Flanagan*, 23 Vt. 160; *Bellows Falls National Bank* v. *Dorset M. Co.*, 61 Vt. 106; *Ballard* v. *Barton*, 64 Vt. 387; *Sylvester* v. *Downer*, 20 Vt. 355; 7 Cyc. 672 and 676 and notes.

HASELTON, J. This is an action of assumpsit, general and special. The plaintiff sought to recover upon a promissory note dated March 15, 1905, payable to the order of the plaintiff, signed on its face by A. E. Rogers, and having on its back the names of David S. Conant and M. G. Flanders, written there by them respectively. The writ in the case was not served upon Rogers and he did not appear. On trial by jury a verdict for the defendants, Conant and Flanders, was returned and judgment was rendered thereon. The plaintiff excepted.

During the trial the plaintiff took some exceptions to rulings of the court admitting evidence, and to the charge of the court in giving certain instructions, and in failing to comply with certain requests.

After the verdict was rendered the plaintiff moved that it be set aside and a new trial granted for the following reasons:

1. That the verdict was against the evidence. 2. That the verdict was against the weight of the evidence. 3. That the court misdirected the jury as to the application of the law to the evidence. 4. Because the jury were allowed to consider inadmissible evidence received against the objection and exception of the plaintiff.

In briefing the case the plaintiff has, in form, argued only the motion to set aside a verdict. Under our statutory system questions of law arising upon the trial of a cause and duly raised by exceptions come directly to this Court on a bill of exceptions showing the rulings, the objections thereto, and the exceptions; and it is with us, though not everywhere, an unusual proceeding to say, not that an exception to a ruling made during trial should be sustained, but to say rather that an exception to a refusal of the trial court to set aside a verdict should be sustained on the ground that on the hearing of such motion the trial court refused to recognize its prior rulings as sufficient grounds for setting aside the verdict. The two questions are not the same, and to depart from our practice, which is but an interpretation of our statutes, would not only be unwarranted, but would also conduce to great harm and confusion.

Here, however, notwithstanding the method of its brief, the plaintiff has really argued in the usual fashion the exceptions taken during trial; and so, without reference to the motion, we examine those exceptions so far as to determine whether or not they show a ground for reversal.

Under the law of this State, Conant and Flanders, being strangers to the note, became *prima facie* makers by putting their names on the back of the note. But it was open to them to show that they were not makers but indorsers and so not holden unless the bank had taken steps to charge them as indorsers. *Lyndon Savings Bank* v. *International Co.*, 78 Vt. 169, 62 Atl. 50, 112 Am. St. Rep. 900; *Same* v. *Same*, 75 Vt. 224, 54 Atl. 191.

The negotiations for the loan were had with one Allen at the rooms of the bank, and Mr. Conant who was there with Rogers, testified that Allen told Rogers that the latter could have the money on the note if he would get two "indorsers," and that there was some talk that Mr. Conant was to be one of the indorsers, and that he took the note to Bradford where it

was signed in the way it was by himself and Flanders, and then returned to Rogers who got the money on the note.

It appears from the exceptions that this evidence was under objection and exception. In its brief the plaintiff urges that Allen had no authority to act for the bank in the matter. He was not then treasurer, but it appears from the bill of exceptions that he was a director and that he consulted in this matter with the other trustees, and by the transcript it appears that the trustees were then in session as a body. The transcript is referred to and made a part of the bill of exceptions, and so, while it is not made controlling, it may be used to supplement the statements in the bill. Considering these circumstances and the fact that director Allen was in the rooms of the bank doing business there we think that the evidence tended to show that Allen had authority to act for the bank.

As to the evidence of Mr. Conant, above recited, the plaintiff further says that it had no tendency to show that he and Flanders were indorsers and not makers. But in the law of bills and notes, as it exists in this State and by common usage, the word "indorser" used alone has a technical meaning not so broad as its etymology suggests. For instance, the statutes provide that the indorsers on a demand note shall be liable upon due notice of dishonor and not otherwise. P. S. 2698. Of course this statute has no reference to one who becomes a maker of a note by writing his name upon its back. The word "indorser" is used in the same sense everywhere in our statutes. See P. S. 2682, 2683, 2697. As long ago as 1834 it was said by Isaac Redfield while practicing at the bar that in the popular understanding signing a note is one thing and backing a note is another. His idea was not combatted by opposing counsel or by the court. *Knapp* v. *Parker,* 6 Vt. 642, 643.

Later this Court in an opinion delivered by Judge Collamer declared that the word "indorse" is a technical one having a distinct meaning. *Brooks* v. *Edson,* 7 Vt. 351, 356.

This Court has pretty generally been careful in its language in this regard and has not ordinarily spoken of one who has written his name upon the back of a note as an "indorser" without qualification of the word, unless he was an indorser as distinguished from a maker. *Lyndon Savings Bank* v. *International Co.,* 78 Vt. 169, 62 Atl. 50, 112 Am. St. Rep. 900; *Lyndon Savings Bank* v. *International Co.,* 75 Vt. 224, 231, 54

Atl. 191; *Stevens* v. *Gibson*, 69 Vt. 142, 146, 37 Atl. 244; *Ballard* v. *Burton*, 64 Vt. 387, 395, 24 Atl. 769, 16 L. R. A. 664; *Flint* v. *Day*, 9 Vt. 345.

The primary meaning of the word "indorsers" seems to have been recognized by the plaintiff in this case for it introduced testimony to contradict Mr. Conant as to the word used by Allen, and its testimony tended to show that Allen said "signers" and not "indorsers." We think that the testimony under discussion was admissible as against any objections made, and that it tended to rebut the presumption that Conant and Flanders were makers, and tended to show that they assumed the liability of indorsers only.

The defendants pleaded payment of the note by Rogers. In support of the claim of payment the defendants introduced the deposition of W. S. Thompson, an attorney-at-law, who testified that as attorney for Rogers he had an interview, at Woodsville, with C. H. Hosford, one of the attorneys for the bank, relative to his bidding off, at a foreclosure sale, mortgaged real estate of Rogers. Thompson testified that Hosford did bid off the farm and gave the former an agreement in writing, the substance of which was that the mortgage indebtedness and costs were to be paid and deducted from the price of the farm, $3,000, that an additional $100 was to be paid Thompson, and in like manner deducted from the sum of $3,000, and that the balance of that sum was to be applied on the note. Thompson testified that on the occasion of this agreement he left with Hosford a note for $1,940, owned by Rogers, and took from Hosford a written agreement, made a part of the deposition, the substance of which agreement is that whatever should be collected on the note, less the expense of collection, should also be applied on the note held by the bank and in suit here. The exceptions state that Thompson testified in his deposition that "in this way he settled and paid the note in suit." But this agreement did not tend to show payment in full but a provision by which sums later to be determined, were to be applied towards payment.

Subject to the plaintiff's objections and exceptions the defendant read other portions of the deposition in which Thompson testified that on this occasion he settled and paid the note in suit, and that it was agreed between himself and Hosford that the bank was to discharge Rogers from all suits and all liability upon the note. The deponent admits that the whole agreement

was reduced to writing except the agreement to discharge from liability, and that, he testifies and the defendants argue, constituted an independent agreement, not contradictory of the written agreement. The defendant claims that throughout Hosford represented the bank, and if we assume, though we do not decide, that he did, the claimed oral agreement was inconsistent with and contradictory of the written agreement which looked to future payments on the note and not to a present settlement.

The testimony does not tend to show that the oral agreement was subsequent to the written agreement, and we think it was inadmissible as tending to contradict a contemporaneous written agreement. If the note was settled and paid it would presumably have been taken up, but it was not and the witness gives no satisfactory explanation of why it was not. We conclude as the evidence stands that the whole agreement must be deemed to have been expressed in the writings, and that there was error in the admission of the oral testimony reviewed.

The motion to set aside the verdict on the ground that it was against the weight of the evidence was addressed to the discretion of the court and is not revisable here. *Lincoln* v. *C. V. R. Co.,* 82 Vt. 187, 196, 72 Atl. 821, 137 Am. St. Rep. 998; *Ward's Admr.* v. *Preferred Accident Ins. Co.,* 80 Vt. 321, 332, 67 Atl. 821.

The claim that the verdict was against the evidence is the same as the claim that it was against the weight of the evidence as has frequently been decided. *Lincoln* v. *C. V. R. Co.,* 82 Vt. 187, 196, 72 Atl. 821, 137 Am. St. Rep. 998; *Coolidge* v. *Ayers,* 77 Vt. 448, 61 Atl. 40; *German* v. *Railroad Co.,* 71 Vt. 70, 42 Atl. 972.

But since the plaintiff may have labored under a misapprehension, we treat this latter claim as raising the question of whether there was evidence to support the verdict. And the answer to that question is that there was, for testimony referred to in the earlier part of this opinion tended to show, notwithstanding the rebuttable presumption to the contrary, that Conant and Flanders assumed only the liability of indorsers, that their implied contract with the bank was that of indorsers merely; and whether they were or not was for the jury to decide on the evidence which was conflicting. If they were indorsers merely the bank had taken no steps to charge them.

There were some exceptions taken to rulings upon evidence, to the charge as given, and to the failure to charge, which we have omitted to consider. They are not likely to present themselves upon another trial, certainly not in the form of an exception to the refusal of the court to set aside a verdict because of claimed erroneous rulings made during the trial, duly excepted to and subject to review without circumlocution.

*Judgment reversed and cause remanded.*